In re Catherine B. STEBBINS–
HOPF, Debtor.

Catherine B. STEBBINS–
HOPF, Plaintiff,

v.

TEXAS GUARANTEED STUDENT
LOAN CORPORATION,
Defendant.

Bankruptcy No. 92–53234–RBK.
Adv. No. 93–5180–RBK.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Sept. 29, 1994.

David T. Cain, San Antonio, TX, for plaintiff Catherine B. Stebbins–Hopf.

Doug W. Ray, Ray, Wood & Fein, Austin, TX, for defendant Texas Guaranteed Student Loan Corp.

1. 11 U.S.C. § 523 (Supp. IV 1992). Title 11 is

## OPINION

RONALD B. KING, Bankruptcy Judge.

In this adversary proceeding, Catherine B. Stebbins–Hopf (the "Debtor") seeks to discharge approximately $9500 of government guaranteed student loans held by the Texas Guaranteed Student Loan Corporation ("TGSLC") under section 523(a)(8)(B) of the Bankruptcy Code[1] on the grounds that repayment of the loans will constitute an undue hardship. The question presented is whether a single debtor with no dependents and some health problems which do not preclude her from maintaining employment is entitled to discharge her student loans because her expenses are greater than her income. For the reasons stated below, the Court concludes that the loans are not dischargeable.

## I. FACTS

The Debtor executed three separate promissory notes each in the original principal amount of $2500, which were assigned to TGSLC. The purpose of the loans was to provide the Debtor with funds to assist her in obtaining a degree in geology at The University of Texas at San Antonio. Because the Debtor could not make ends meet, she took full-time employment, and did not complete her degree. The Debtor has repaid approximately $1300, primarily in interest. The Debtor has no degree, no vocational training, no certification, and no special licenses. The Debtor has, however, maintained employment in the past, and was promoted to her present job. Her net income is approximately $1300 per month, which the Debtor claims is approximately $500 per month less than her expenses.

The Debtor and her family have some health problems. The Debtor has foot nerve damage, bronchitis, and arthritis. While these ailments have caused the Debtor to miss work on occasion, she has been able to maintain employment and receive a promotion. The Debtor's daughter, a married adult, is an epileptic. The Debtor's mother has cancer, and the Debtor's grandchildren are asthmatic. The military provides health care for the Debtor's adult daughter. The

referred to herein as the "Bankruptcy Code."

Debtor's mother provides the Debtor with financial assistance. Considering these circumstances, the Court must decide whether a discharge of the Debtor's student loans is warranted under the undue hardship exception of section 523(a)(8)(B) of the Bankruptcy Code.

## II. DISCUSSION

### "UNDUE HARDSHIP"

Section 523(a)(8)(B) of the Bankruptcy Code provides an exception to a debtor's discharge:

> (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—
>
> .     .     .     .     .
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents ...

11 U.S.C. § 523(a)(8)(B) (Supp. IV 1992). Because the Bankruptcy Code does not define "undue hardship," bankruptcy courts have taken different approaches in actions to determine the dischargeability of student loans. In *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993), the Seventh Circuit adopted the undue hardship test set forth by the Second Circuit in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987):

> "[U]ndue hardship" requir[es] a three-part showing: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

The first prong of the *Brunner* test requires an examination of the debtor's current expenses and income to determine if repayment of the loan would cause the debtor to fall below a minimal standard of living for the debtor and her dependents. This is a threshold matter which must be met before the Court examines the next two prongs. Because information involving the debtor's current financial status is readily available, the debtor must, at the very least, "[demonstrate] that ... [s]he is unable to earn sufficient income to maintain [her]self and [her] dependents and to repay the educational debt." *Roberson*, 999 F.2d at 1135 (quoting COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, REPORT, H.R.Doc. No. 137, 93d Cong., 1st Sess., Pt. II, at 140 n. 15 (1973)).

The second prong of this test requires that the debtor show that her strained financial condition, demonstrated by the application of the first prong of the test, will continue for a significant portion of the repayment period. This part of the test is consistent with Congress's intention that there be "undue hardship" and not simply "ordinary hardship." *Mathews v. Higher Educ. Assistance Found. (In re Mathews)*, 166 B.R. 940, 943 (Bankr. D.Kan.1994). "[T]he dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Roberson*, 999 F.2d at 1136 (quoting *Briscoe v. Bank of New York (In re Briscoe)*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981)). Therefore, the Court must determine whether there is a current inability to pay and, additionally, whether circumstances strongly suggest the debtor will be unable to repay over an extended period of time. *Id.* (citing *Brunner*, 831 F.2d at 396).

After the debtor satisfies the first two prongs of the test, she must meet the final prong—the debtor must show that she made a good faith effort to repay the loan. Because educational loans are different from other loans in that they are made without security and without co-signers, the student assumes an obligation to make a good faith effort to repay those loans. The Court should consider whether the debtor has made an effort to maximize her income and mini-

mize her expenses. Therefore, a debtor may not willfully or negligently cause her own default. *Roberson,* 999 F.2d at 1136.

■ Some bankruptcy and district courts have used the three-part test articulated in *Higher Educ. Assistance Agency v. Johnson (In re Johnson),* 5 Bankr.Ct.Dec. 532 (Bankr. E.D.Pa.1979).[2] The *Johnson* test is essentially the same as the *Brunner* test except that it adds a policy component. The policy test asks two questions: (1) Whether the dominant purpose of the bankruptcy petition was to discharge the student debt, or (2) whether the debtor has definitely benefitted financially from the education which the loan helped to finance.[3] The first question under this prong of the test is aimed at bankruptcy petitions which are filed primarily to avoid repayment of loans. The *Brunner* requirements address this concern. *Roberson,* 999 F.2d at 1136. The second question of the policy test is improper because it examines whether the debtor definitely benefitted financially from the education financed by the loan. *Johnson,* 5 Bankr.Ct.Dec. at 544. This question conflicts with the concept of government backed loans because the government is not an insurer of educational benefit. As stated in *Roberson:*

> The government is not twisting the arms of potential students. The decision of whether or not to borrow for a college education lies with the individual; absent an expression to the contrary, the government does not guarantee the student's future financial success. If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow.

999 F.2d at 1137.

■ Applying the test adopted by the Second and Seventh Circuits, this Court must decide whether the Debtor's circumstances justify discharging her educational loan debt. The Debtor has the burden of proving that this is warranted. *Id.* at 1137 (citing *Cadle Co. v. Webb (In re Webb),* 132 B.R. 199, 201 (Bankr.M.D.Fla.1991); *Ealy v. First Nat'l Bank of Matton (In re Ealy),* 78 B.R. 897, 898 (Bankr.C.D.Ill.1987)).

■ Can the Debtor maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans? Despite the Debtor's claims that her mother, daughter and grandchildren are dependents, the Court concludes that these family members are not dependents. There is no evidence that the Debtor claims these individuals as dependents for tax purposes. Her daughter is married, and the military provides health care for her daughter's family. Moreover, the Debtor claims that she provides financial assistance to her family, but she also admits that she accepts financial assistance from her family. From these facts, the Court concludes that the Debtor has no dependents.

■ The Debtor listed her monthly income and expenses as follows:

| Net Monthly Income | $1250 |
|---|---|
| **Monthly Expenditures:** | |

| | |
|---|---|
| Mortgage | 250 |
| Utilities | 320 |
| Automobile | 375 |
| Insurance | 120 |
| Food | 400 |
| Meals, Lunch | 40 |
| Recreation | 10–20 |
| Medical (Uninsured) | 40 |
| Daycare | 0 |
| Clothing | 30–40 |
| Total | 1650 |

With these figures, the Debtor meets the first prong of the *Brunner* test because her expenses exceed her income without considering the repayment of the educational loans.

The second question is whether the Debtor's financial condition is only temporary or will continue over the substantial part of the repayment period. Despite the fact that the

**2.** The *Roberson* Court declined to adopt the three-part test articulated in *Johnson,* 5 Bankr. Ct.Dec. 532, 544 (Bankr.E.D.Pa.1979). *See Roberson,* 999 F.2d at 1135.

**3.** Other courts use a case-by-case factor analysis approach. *See Coleman v. Higher Educ. Assistance Found. (In re Coleman),* 98 B.R. 443 (Bankr.S.D.Ind.1989) for a typical list of factors considered by the courts which use the case-by-case approach. This approach would give courts too much discretion which could undermine Congress's intention to have a heightened standard for student loan discharge. *Mathews,* 166 B.R. at 945.

Debtor has health problems, the ailments she is experiencing do not preclude employment. The Debtor has not established that she cannot get a raise or promotion in the future, and there are no real barriers preventing the Debtor's employment. Her situation is not so severe that there is a "certainty of hopelessness."[4] *Mathews*, 166 B.R. at 945–46; *see Roberson*, 999 F.2d at 1138 (no discharge for debtor who had been laid off and had lost his job but who had no irreparable harm). This Court concludes, therefore, that the second prong of the test is not met, and thus this Court holds that the Debtor has failed to establish that her circumstances warrant a hardship discharge pursuant to section 523(a)(8)(B) of the Bankruptcy Code.

Even if the Court had to apply the good faith prong of the test, the Debtor would fail to meet her burden. In order to satisfy this final part of the test, the Debtor must show that she did not willfully or negligently cause her own default and that she made a good faith effort to repay. *Roberson*, 999 F.2d at 1136. Although the Debtor repaid $1300 in interest on the loans, she then ceased making payments. She intentionally chose to help her family financially even though these individuals were not legally her dependents. Rather than circumstances beyond her control being the cause of the Debtor's default, the Debtor herself is responsible for her financial hardship. The Court recognizes the generosity of the Debtor, but finds that her moral obligation to family members who are not dependents does not take priority over her legal obligation to repay her educational loans.

## III. CONCLUSION

In conclusion, the Debtor has failed to meet the requirements of the *Brunner* test.

4. Cases where the debtor met the second prong of the *Brunner* test exhibited a combination of low income and exceptional circumstances so severe that the debtor would not have been able to repay the loans. *Mathews*, 166 B.R. at 945 (citing *Berthiaume v. Pennsylvania Higher Educ. Assistance Auth. (In re Berthiaume)*, 138 B.R. 516 (Bankr.W.D.Ky.1992) (debtor who was not able to secure permanent employment because she was suffering from a congenital heart defect, dyslexia, and clinical depression was entitled to a hardship discharge); *Shoberg v. Minnesota Higher Educ. Coordinating Council (In re Shoberg)*, 41 B.R. 684 (Bankr.D.Minn.1984) (debtor with child

She has no health problems that preclude her from working, she has no dependents, there is no "certainty of hopelessness," and the failure to repay the loans is due in large part to choices which she voluntarily made. Accordingly, the Court finds that the Debtor is not entitled to a hardship discharge pursuant to section 523(a)(8)(B) of the Bankruptcy Code.

TGSLC and the Debtor should agree on a repayment schedule that enables the Debtor to meet her reasonable living expenses. TGSLC shall file a report with the Court and serve a copy on the Debtor within twenty (20) days from the entry of the judgment.

This Opinion shall constitute the findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052. A separate judgment shall be rendered.

support obligation and medical condition coupled with few job skills who had little prospect of full-time employment at a decent wage was entitled to hardship discharge)); *Roberson*, 999 F.2d at 1137 (citing *Financial Collection Agencies v. Norman (In re Norman)*, 25 B.R. 545, 550 (Bankr.S.D.Cal.1982) (psychiatric problems prevented work); *Siebert v. United States Government Department of Health Educ. and Welfare (In re Siebert)*, 10 B.R. 704, 705 (Bankr.S.D.Ohio 1981) (lack of usable job skills and severely limited education); *Clay v. Westmar College (In re Clay)*, 12 B.R. 251, 254 (Bankr.N.D.Iowa 1981) (required to fully support dependents)).