**In re Graddie HALL and Belinda Hall, Debtors.**

**Graddie Hall, Plaintiff,**

v.

**U.S. Department of Education National Payment Center, Defendant.**

**Bankruptcy No. 01–14691.**
**Adversary No. 01–1320.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 14, 2002.

---

Christine B. Hill, Cincinnati, OH, for Plaintiff/Debtors.

Nicholas Pantel, Cincinnati, OH, for Defendant.

Thomas J. Geygan, Cincinnati, OH, Chapter 7 Trustee.

## MEMORANDUM OPINION

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on the Complaint to Determine Dischargeability filed by debtor, Graddie Hall. In his Com-

plaint, Mr. Hall requests that the Court discharge his student loan obligation pursuant to 11 U.S.C. § 523(a)(8). On February 20, 2002, an evidentiary hearing was held in this matter.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District and is determined to be a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(I). The Court is authorized to enter final judgment in this matter. The following constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

On June 26, 2001, Graddie Hall and his wife, Belinda Hall, filed their chapter 7 petition. On September 24, 2001, Graddie Hall filed his complaint against the U.S. Department of Education National Payment Center ("Dept. of Education") seeking a determination that his student loan in the amount of $10,408.00 was dischargeable on the basis of undue hardship pursuant to 11 U.S.C. § 523(a)(8).

Mr. Hall is 38 years old and has no serious health problems that affect his ability to work. He has a high school diploma. In 1990 he obtained a student loan from Defendant and completed a course on operating equipment used for earth moving. He used the student loan to pay for the course and to pay for living expenses during the time period he was taking the course. The original principal balance of his student loan was $5,674.00. Although he completed the course in 1990, Mr. Hall did not attempt to make any repayments on the loan until December 1999 or January 2000. At that time, he set up a payment schedule with the Dept. of Education and made one payment of $105.00. He could not remember whether he actually made one or two payments on the loan. Due to his admitted neglect in making payments, the loan balance is now $10,408.00.

Mr. Hall testified that he is not using the education he obtained with his student loan because he once got sun poisoning while performing his job as a small earth mover. The doctor he visited advised him that he would need to use a strong sun block and wear long sleeves to work outside. Since he was uncomfortable with this solution, Mr. Hall chose instead to change jobs.

He is currently employed with Dayton Technologies as an extruder operator making $10.78 per hour. His current salary at Dayton Technologies is the highest he has ever made. Mr. Hall states that his employer is a stable company and he expects to be able to retire from that position. He works 36 to 48 hours per week during slow months and 48 to 60 hours per week during the peak spring and summer seasons. He is reviewed every 6 months and is eligible for a 6 percent increase in salary every 6 months. Mr. Hall's net pay varies from approximately $186.00 per week for a 36–hour week to $310.00–315.00 per week for a 48–hour week and $420.00–$430.00 per week for a 60–hour week.

Mr. Hall is currently paying child support for five children from previous marriages. He is paying a child support arrearage of approximately $43,850.00 that he has allowed to accumulate since 1984. This arrearage relates to the three children from his first marriage who have since obtained the age of majority. He is also paying child support for two children from his second marriage who were 15 and 16 years old at the time of this hearing. He is current in his payments for these two children. The support payments for all five children are taken in the form of a weekly garnishment of $82.40. Approximately $30.00 representing the weekly

payments for the 15– and 16 year-old children will soon cease.

Since filing the petition, Mr. Hall's 16–year–old son has moved in with the Debtors. Mr. Hall and his wife have also been taking care of Mr. Hall's four-year-old godchild for the past two years. They do not receive any contributions from the godchild's parents for his care.

The Debtors have a small arrearage for 1999 income taxes of approximately $270.00 that they have not paid.

Mrs. Hall was not employed at the time the Debtors filed their petition because she was caring for her terminally ill father. Mrs. Hall's father passed away in the summer of 2001 and Mrs. Hall is currently seeking employment. Prior to filing the bankruptcy, Mrs. Hall had been employed as a receptionist making $7 to $8 per hour. Mr. Hall testified that Mrs. Hall has an injury to her knee but that she has worked as a receptionist with this injury. Mr. Hall indicated he previously could not depend on Mrs. Hall's income when she did work. However, the issues with her employment appeared to be related to problems with the injury to her knee or to her father's illness. Neither of which should now be an issue if she is again employed as a receptionist.

Mr. Hall testified that Mrs. Hall does not expect to receive an inheritance from her father's estate. He also stated that post-petition his wife obligated herself on the funeral bill for her father's burial in the amount of $7,800.00. However, Mr. Hall did not present evidence of this debt. Mr. Hall testified that the house owned by Mrs. Hall's father had a value of approximately $69,900.00 and that the existing mortgage was approximately $41,000.00.

He further indicated that there was a life insurance policy which his "sister-in-law took." He did not present evidence as to the amount of the insurance policy or evidence that all of the proceeds should be disbursed to his sister-in-law. His father-in-law's estate has not been probated.[1]

Mr. and Mrs. Hall have been living in his father-in-law's house since 1996. Mr. Hall testified that he withdrew $1,450.00 from his 401–K to pay to the mortgagee to keep the house from going into foreclosure. However, Mr. Hall testified that the Debtors have not been required to pay rent for the time they have lived in his father-in-law's house. Mr. Hall testified that he tried to pay the mortgage on the house; however, he was not able to do so and the house is currently in foreclosure. Mr. Hall expects to incur rent payments of approximately $550.00 once the foreclosure is completed and he and Mrs. Hall are forced to vacate the house.

The Debtors' original Schedules I and J reflected a net monthly income of $1,174.00 and net expenses of $1,065.00. The expenses included a payment of $105.00 for Mr. Hall's student loan as well as a $50.00 payment for the debt owed to the IRS. Even though provided for in the Schedule J budget, Debtors have not been making either of those payments. However, Mr. Hall is currently making a $125.00 monthly contribution to his 401–K plan. He testified that he plans to stop making this contribution.

Since the filing of the petition, Mr. Hall testified that his expenses have increased. On December 21, 2001, Mr. Hall submitted a revised Schedule J as an attachment to interrogatories propounded by the Plain-

---

1. The Court also notes that it is unclear whether the chapter 7 trustee has been advised of the death of Mrs. Hall's father so that the trustee can take appropriate actions to determine whether any insurance proceeds or inheritance would be property of the estate. See 11 U.S.C. § 541(a)(5)(A), (C).

tiff. The revised Schedule J, which was not filed in the original case, reflects expenses of $1,642.50. Mr. Hall testified at trial that his utility bills are higher than reflected in this amended Schedule J. He indicated his water bills average $50 rather than $40 per month.

Mr. Hall also indicated that his electric bill was higher than the $150.00 itemized in his revised Schedule J and gave as an example that his January 2002 bill was $244.57. However, he also testified that his October 2001 bill was $83.00. Mr. Hall did not give the Court a figure which he considered a monthly average for his heating and electric bill.[2] Taking into consideration the additional $10.00 for the monthly water bill, the Court determines that Mr. Hall's monthly expenses total $1,652.50. The amended Schedule J reflects that this amount includes a $50.00 payment to the IRS and a $15.00 payment for Mr. Hall's student loan. It also includes a $550.00 payment for housing which the Halls are not currently required to make.

Based on this record and for the reasons discussed below, we find that Mr. Hall's student loan is nondischargeable.

## DISCUSSION

■ Section 523(a)(8) of the Bankruptcy Code governs the dischargeability of student loan debt, and provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

■ A debtor seeking discharge of a student loan debt under § 523(a)(8) has the burden of proving by a preponderance of the evidence that he qualifies for the "hardship discharge." *In re Dolph*, 215 B.R. 832, 836 (6th Cir. BAP 1998).

The Sixth Circuit has declined to adopt a rigid test to measure undue hardship, choosing instead to look at several factors. *See In re Hornsby*, 144 F.3d at 437 (citing *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359 (6th Cir.1994) and *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996)). The *Hornsby* Court set forth factors to be considered by the bankruptcy court as follows:

We have considered the three factors set forth in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir.1987) (per curiam), which is the test that has been most widely applied:

One test requires the debtor to demonstrate (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period ...; and (3) that

---

**2.** The exhibits introduced into evidence, but not discussed at the hearing, also reflect that Mr. Hall had high electric bills for August and November 2001. However, providing the Court with evidence of the higher bills without providing the bills for the full year does not provide evidence that the average of his utility bills is much higher than the $150.00 figure provided in Mr. Hall's revised Schedule J.

the debtor has made good faith efforts to repay the loans.

> A bankruptcy court might also consider, among other things, the amount of the debt ... as well as the rate at which interest is accruing and the debtor's claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents.

*In re Hornsby*, 144 F.3d at 437 (footnotes, internal quotations and citations omitted).

The *Brunner* court also noted that predicting future income was difficult or problematic and that with respect to the second prong of the test, "[r]equiring evidence not only of current inability to pay but also of additional, *exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time,* more reliably guarantees that the hardship presented is 'undue.'" *Brunner*, 831 F.2d at 396 (emphasis added).

Using estimates of $1,299.00 per month for Mr. Hall's income [3] and $1,652.50 as expenses, the Debtors currently have a deficiency of approximately $353.50 per month. Mr. Hall is arguably able to meet the first prong of the *Brunner* test.[4] It is the second and third prongs of the test that he is unable to meet.

The second prong of the test requires that Mr. Hall establish that his financial condition will continue over a substantial part of the repayment period. He has not been able to meet this burden.

Mr. Hall has no health problems. He is employed in a position with a stable company where he is making more income than he ever has, he has the possibility of increasing his salary every six months. As he advances in seniority, he is able to obtain more overtime. Even though Mr. Hall is not using the education he obtained with his student loan, he is "not entitled to an undue-hardship discharge by virtue of selecting an education that failed to return economic rewards." *Coveney v. Costep Servicing Agent (In re Coveney)*, 192 B.R. 140, 143 (Bankr.W.D.Tex.1996) (citing *In re Roberson*, 999 F.2d 1132, 1137 (7th Cir. 1993)).

Further, Mr. Hall's child support payments of approximately $30.00 per week for his two younger children will cease in the next few years. There is also the possibility that there may be some equity in his father-in-law's house and insurance proceeds that can be of benefit to the Debtors' estate if the trustee is given the opportunity to and properly investigates this matter.

In addition, the $50.00 monthly payment Mr. Hall has budgeted for the IRS taxes in the amount of $270.00 is not a long-term debt. That $50.00 can also be rerouted to payment of his student loan once the IRS debt has been paid.

Most significantly, Mrs. Hall is now in a position to return to work and contribute to the household income. Mr. Hall attempted to minimize the contribution Mrs. Hall's income would have on the house-

---

3. This figure comes from adding the $1,174.00 set forth in Mr. Hall's Schedule I as net monthly income to the approximate amount of $125.00 that will be available when Mr. Hall discontinues the 401–K contribution.

4. Mr. Hall is not currently making the $550.00 rental payment Debtors may be required to make once they are forced to vacate his father-in-law's house. Therefore, arguably, the Debtors do not even meet the first prong of the test since using their own figures, they currently have excess income of $196.50. ($1,652.50—$550.00 = current monthly expenses of $1,102.50 and Debtors have $1,299.00 monthly net income).

hold. However, there is no reason apparent to the Court why Mrs. Hall cannot maintain a position as a receptionist and make a meaningful contribution to the household. This is especially so in light of the fact that she previously worked as a receptionist and is currently seeking employment.

There are no "exceptional circumstances, strongly suggestive of [Mr. Hall's] continuing inability to repay over an extended period of time." *Brunner*, 831 F.2d at 396. Mr. Hall fails to meet the second prong of the *Brunner* Test.

■ In addition, even if he were able to meet the second prong, Mr. Hall fails to meet the third prong of the test. He has failed to make a good faith effort toward repayment of his loan.

■ For Mr. Hall to meet the third prong of the test he must have made a good faith effort to repay his student loan. "[T]he Debtor must show that [he] did not willfully or negligently cause [his] own default, and that [he] made a good faith effort to repay." *In re Coveney*, 192 B.R. at 144; *see also In re Roberson*, 999 F.2d at 1136 (debtor must show that he did not willfully or negligently cause his own default but that default occurred as a result of circumstances beyond his control); *Elebrashy v. Student Loan Corp. (In re Elebrashy)*, 189 B.R. 922 (Bankr.N.D.Ohio 1995) (same).

Mr. Hall completed his education in 1990 and did not even attempt to make a payment until December 1999 or January 2000. At the trial Mr. Hall stated quite frankly that he had not attempted to make any payments on his student loan debt until 1999 because he simply "neglected" to do so. He offered no circumstance or reason beyond his control as to why he could not have made at least some payments during those nine years.

Mr. Hall has voluntarily assumed the responsibility to care for his godson. However, any moral obligation Mr. Hall may feel to assist in caring for his godson, who is not a legal dependent, does not take priority over his legal obligation to repay his student loan. *In re Coveney*, 192 B.R. at 144 (debtor's moral obligation to care for her mother, "who is not a dependent, does not take priority over her legal obligation to repay her educational loans"); *see also Hoyle v. Pennsylvania Higher Educ. Assistance Agency (In re Hoyle)*, 199 B.R. 518, 521 (Bankr.E.D.Pa.1996) (debtor's 25 and 22 year old children were not dependents for purposes of determining dischargeability of debtor's student loan obligations); *Stebbins–Hopf v. Texas Guaranteed Student Loan Corp. (In re Stebbins–Hopf)*, 176 B.R. 784, 787–788 (Bankr.W.D.Tex.1994) (although debtor felt moral obligation to provide financial assistance to daughter and grandchildren, they were not her dependents).

Mr. Hall points to his large child support arrearage as a reason why he cannot pay his student loan obligation. Mr. Hall, however, presented no evidence as to why that obligation was also neglected for such a long period of time. Significantly, he did not state he was financially unable to pay the child support when it was due. The fact that Mr. Hall also neglected his nondischargeable child support obligation until it accumulated to such a large amount is not a reason to discharge his student loan obligation which he also neglected.

Mr. Hall has no health problems. He has a steady, stable job with an employer where he expects raises every six months and where he expects to be able to work until he retires. There is no "certainty of hopelessness" and failure to repay his student loan is due in large part to choices Mr. Hall voluntarily made. *See In re Coveney*, 192 B.R. at 144.

Accordingly, we find that Mr. Hall is not entitled to a hardship discharge pursuant to § 523(a)(8) of the Bankruptcy Code.

**IT IS SO ORDERED.**