In re Linda A. LAMANNA, Debtor.

Linda A. Lamanna, Plaintiff,

v.

EFS Services, Inc. Rhode Island Student Loan Authority Sallie Mae Servicing Corp., et al, Defendants.

Bankruptcy No. 01–10522.
Adversary Nos. 01–1043, 01–1044.

United States Bankruptcy Court, D. Rhode Island.

Oct. 15, 2002.

Christopher Lefebvre, Esq., Law Office of Claude Lefebvre & Sons, Pawtucket, RI, for Debtor/Plaintiff.

Brian J. Lamoureux, Esq., Brown Rudnick Freed & Gesmer, Providence, RI, for Defendants.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Debtor, Linda A. Lamanna's Complaint to determine the dischargeability of her Student Loan obligations under 11 U.S.C. § 523(a)(8) or, alternatively, under 11 U.S.C. § 105(a). The main issue presented is whether under 11 U.S.C. § 523(a)(8) the Bankruptcy Court has authority to partially discharge student loan obligations upon a finding of undue hardship. As a fallback position the Debtor argues that the Court has authority to grant a partial discharge under its 11 U.S.C. § 105(a) equitable powers. Edu-cational Credit Management Corporation ("ECMC") takes the all or nothing approach that either all of Lamanna's debt is dischargeable, or none of it is. For the reasons discussed below, I rule, gratuitously, that § 105(a) does not give the Bankruptcy Court the power to grant a partial discharge of a student loan obligation where there is no Code provision granting that authority in the first place. I also rule, however, that § 523(a)(8) not only allows a partial discharge of a debtor's total student loan obligation, but mandates that result upon a finding of undue hardship.

### BACKGROUND AND FACTS

Lamanna began her Ph.D. studies at Nova Southeastern University in 1991, while continuing to work full time at Community College of Rhode Island ("CCRI"). Between 1991 and 1992, she financed her advanced degree work with a number of student loans from EFS Services, Inc. ("EFS"). The original combined balance of these loans was $26,500. Then, from 1993 to 1999, Lamanna further financed her graduate education with more student loans from Sallie Mae Servicing Corp., et al. ("Sallie Mae"), and the original combined balance for this second round of loans was $91,579. In controversy are 24 student loans, *none of which have been consolidated.* *See* Defendant's Exhibit 5. With interest, the total amount owed on these loans exceeds $148,500, and each of said loans is presently serviced by ECMC as successor-in-interest to EFS and Sallie Mae. To date the Debtor has made no payments on any of her loans, as they have all been in forbearance status since the completion of her studies in 1999.

Lamanna is 49, single, with no dependents, has been employed at CCRI since May 1978, and will be eligible to retire at age 66, in 17 years. The Debtor's job with

CCRI is her only source of income, which in 2001 was $49,875 (adjusted gross). Although the Debtor has in the past earned overtime pay, she fears that budget constraints *may* preclude her from working overtime in the future. She has received federal and state income tax refunds of approximately $3,800 for the past five years, and her monthly expenses average $2,100. Lamanna testified that she attempted to find higher paying employment using her newly acquired Ph.D. degree but was unsuccessful, and that in the current economic climate it will be difficult to find a higher paying job for which she is qualified. Lamanna also testified that she applied for a Dean's position at CCRI but was not even interviewed, though she had the backing of superiors. She stated, again without foundation, that the position was not filled because of lack of funding.

## DISCUSSION

### A. *All or Nothing*

The question of partial student loan dischargeability under 11 U.S.C. § 523(a)(8) has been addressed by many bankruptcy courts, and there seem to have emerged three different viewpoints: the Strict approach; the Flexible approach; and the Hybrid approach. *See Grigas v. Sallie Mae Servicing Corp. (In re Grigas)*, 252 B.R. 866 (Bankr.D.N.H.2000), where the court described disputes like this one as involving

> two opposing camps [that] have been firmly assembled and a third camp is emerging. All three camps arrive at different ends, but start at the same beginning: the language of § 523(a)(8). Section 523(a)(8) provides that an educational loan shall not be discharged, "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependants." ... Although all sides

acknowledge the thrust of this language, difference exists regarding its malleability.

*Id.* at 870 (citation omitted). In *Grigas*, Judge Deasy analyzed the three approaches as follows:

*The Strict Approach:*

■ "[C]ourts in the 'strict' camp hold that § 523(a)(8) does not allow a court to restructure student loans by discharging them in part. According to such courts, a debtor's student loans are either dischargeable *in toto*, or they are not." *In re Grigas*, 252 B.R. at 871. These courts conclude that the statute requires an all or nothing treatment regarding student loan dischargeability, *id.*, and one court held that partial discharges are unauthorized by the plain language of 11 U.S.C. § 523(a)(8), *see United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747 (9th Cir. BAP 1998), where the panel also stated that "where Congress has failed to include language in statutes, it is presumed to be intentional when the phrase is used elsewhere in the Code." *Id.* at 753. *Taylor* also says:

> [W]e note that Congress included the phrase "to the extent," in three other subdivisions of the dischargeability statute, § [§ ] 523(a)(2), (a)(5), and (a)(7), ... Consequently, because the plain language of § 523(a)(8) implies that only the entire debt can be discharged for undue hardship, and because Congress expressly limited the extent of a debt's discharge in other subsections of § 523, we hold that § 523(a)(8) does not authorize a partial discharge of student loans.

*Id.* at 754.

*The Flexible Approach:*

■ "In contrast to the strict camp, the opposing view concludes that § 523(a)(8) does allow a partial discharge ... [and]

that a debtor's student loans may be partially discharged in a multitude of ways, including the discharge of a partial principal amount." *In re Grigas*, 252 B.R. at 871, and *Grigas* references *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), and § 105(a) for such authority:

> Where a debtor's circumstances do not constitute undue hardship, some bankruptcy courts have thus given a debtor the benefit of a "fresh start" by partially discharging loans, whether by discharging an arbitrary amount of the principal, interest accrued, or attorney's fees; by instituting a repayment schedule; by deferring the debtor's repayment of the student loans; or by simply acknowledging that a debtor may reopen bankruptcy proceedings to revisit the question of undue hardship. We conclude that, pursuant to its powers codified in § 105(a), the bankruptcy court ... may fashion a remedy allowing the... [debtors] ultimately to satisfy their [student loan] obligations ... while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances.

*Id.* at 440.

The Debtor also cites to *Afflitto v. U.S. (In re Afflitto)*, 273 B.R. 162 (Bankr. W.D.Tenn.2001), in urging this Court to use its equitable powers under 11 U.S.C. § 105(a) to partially discharge her student loan obligations. In *Afflitto* the debtor had consolidated all of his student loans, effectively "restructuring" his original separate student loans into one obligation, requiring the bankruptcy court to view the entire debt as a single obligation. Nevertheless, the *Afflitto* court granted the debtor a partial discharge, stating that section 105(a) allowed it to "fashion a remedy to provide the Debtor the benefit of a 'fresh

start' while at the same time granting some satisfaction of the student loan debt." *Id.* at 172.

■ I disagree with both *Hornsby* and *Afflitto* to the extent that they use Section 105 as the authorization for the Bankruptcy Court to partially discharge student loans. Section 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105 (2002). Section 523(a)(8) speaks to a single debt, i.e., that a student loan is nondischargeable "unless excepting *such debt* from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants." 11 U.S.C. § 523(a)(8) (emphasis added).

> Section 523(a)(8)'s language refers to a debt in its totality, and does not envision only a portion being discharged. This conclusion is strengthened by the observation that Congress knows how to allow a partial discharge when it so desires, and has done so in statutory subsections coexisting with § 523(a)(8). It is a fundamental tenet of statutory interpretation that "where Congress has failed to include language in statutes, it is presumed to be intentional when the phrase is used elsewhere in the Code." ... Moreover, this Court views its § 105 powers as limited with respect to granting a partial discharge in the context of § 523(a)(8). A bankruptcy court's equitable power under § 105 is limited to advancing the Bankruptcy Code within the confines of its text.... Section 105 cannot, therefore, be used to turn a Code provision on its head. The text of § 523(a)(8) does not allow a partial discharge, and § 105 cannot be used to rewrite such language.

*In re Grigas*, 252 B.R. at 872 (citations omitted).

■ It has been made crystal and consistently clear by appellate courts that bankruptcy judges do not have "a roving commission to do equity" in a fashion inconsistent with other provisions of the Code.[1] *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 n. 42 (5th Cir. 1995) (*quoting U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986)). *See also Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Management, Inc.)*, 4 F.3d 1329, 1334 (5th Cir.1993) (§ 105 orders must be issued in a manner consistent with the Code); *In re Plaza de Diego Shopping Center, Inc.*, 911 F.2d 820, 830-31 (1st Cir.1990) (bankruptcy court's equitable jurisdiction may not be exercised in ways inconsistent with the "commands of the Bankruptcy Code"). *Roffman v. Butler (In re ROPT Ltd. P'ship)*, 209 B.R. 144, 149-50 (1st Cir. BAP 1997). Given the clear dictates of Section 523(a)(8), the use of Section 105 to expand those parameters is not authorized.

*The Hybrid Approach:*

■ As discussed in *Grigas:*

[T]he Hybrid approach employs reasoning found in both the strict and flexible camps. In essence, courts within the hybrid camp agree with the strict camp, insofar that it holds that a *single* educational debt cannot be restructured so that only a portion is discharged. However, the hybrid camp goes one analytical step further by concluding that, in applying § 523(a)(8), a debtor's student loans need not be aggregated, and that § 523(a)(8) may be applied on an independent basis.... In other words, the hybrid approach applies § 523(a)(8) to a debtor's educational debt on a loan-by-loan basis, with the result that some of a debtor's student loans may be discharged while others may be found non-dischargeable.

*In re Grigas,* 252 B.R. at 872-873 (emphasis added).

*Grigas* went on to say that "[C]ourts within the hybrid camp first conclude that, like the strict approach, § 523(a)(8) does not allow the partial discharge of student debts.... However, they further observe that many courts fail to recognize the fact that although educational debts often involve a single lender, they usually reflect a multitude of individual loans." *Id.* at 873 (citation omitted). The court ultimately concluded that:

[A]lthough § 523(a)(8) does not allow a single debt to be partially discharged, individual educational loans may be discharged while others may be declared non-dischargeable depending on whether each loan, on a cumulative basis, imposes an undue hardship on the debtor and his or her dependents. Consequently ... the Court shall independently determine whether each of Debtor's ... individual loan obligations imposes an undue hardship under § 523(a)(8), taking into consideration whether the remaining loan obligations are dischargeable.

*Id.* at 874.[2]

In essence, courts using the Hybrid approach look to all of the Debtor's student loans and apply the undue hardship analysis to each loan, separately.

---

1. This Court has been acutely aware of this precept since being so reminded by the District Court for the District of Maine in *Wilner Wood Prods. Co. v. State of Maine, Department of Environmental Protection,* 128 B.R. 1, 3-4 (D.Me.1991).

2. While none of this Debtor's loans have been consolidated, *Grigas* probably would not apply in cases where there has been loan consolidation. *See* 252 B.R. at 873. *See also Hinkle v. Wheaton College (In re Hinkle),* 200 B.R. 690, 692 (Bankr.W.D.Wash.1996).

*Choosing a Path:*

■ I have already ruled out the flexible approach, and upon consideration of the remaining two, favor the hybrid approach, as it does not offend the plain language of the statute and still reflects the spirit and intent of Congress in enacting Section 523(a)(8), which

> speaks to one or to each loan. Many of the cases on both sides of the issue completely overlook the apparently express wording of the statute which mandates an undue hardship evaluation for each individual educational loan obligation. The cases deal with the debt in aggregate, perhaps misled merely because multiple loans are often held by one lender, servicer or guarantor which may subtly manage to blend multiple liabilities on actually different claims into one single debt.

*Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen),* 232 B.R. 127, 134 (8th Cir. BAP 1999). *Andresen* suggests that critics in the strict camp have not read the statute carefully, for if they had they would see the requirement that an individual undue hardship determination for each student loan could result in some, but maybe not all, of a debtor's student loans being discharged. *See id.* at 135.

Recently, in *Coutts v. Massachusetts Higher Education Corp. (In re Coutts),* 263 B.R. 394 (Bankr.D.Mass.2001), Bankruptcy Judge Rosenthal, correctly in my view, applied the hybrid approach, saying:

> the proper analysis is not a true "partial" discharge in the sense of splitting a single or aggregate loans into dischargeable and non-dischargeable parts, but instead to apply the prevailing undue hardship test used by this Court to each individual loan to determine whether a hardship exists for the debtor to pay such loan. A reasonable starting point

is with the oldest loan forward. The result may very well be considered a "partial" discharge in that the debtor may no longer owe certain of her loans, but no loan will be parsed.

*Id.* at 401.

### B. Determining Undue Hardship

■ In considering undue hardship I still like the totality of the circumstances test used in *Phelps v. Sallie Mae Loan Service Center (In re Phelps),* 237 B.R. 527 (Bankr.D.R.I.1999), which "requires 'an analysis of (1) the debtor's past, present, and reasonably reliable future financial resources; (2) calculation of the debtor's and his[/her] dependents' reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding that particular bankruptcy case." ' *Id.* at 535, (*quoting Andresen,* 232 B.R. at 140); *see also Kopf v. U.S. Dept. of Education, (In re Kopf),* 245 B.R. 731 (Bankr.D.Me.2000).

### C. Applying the Standards:

■ In this case the Debtor's attempts to achieve higher paying positions based upon her recently acquired Ph.D. have failed, her outside job search was also unsuccessful, and the likelihood is that the Debtor will continue working at CCRI in essentially the same capacity until she retires. While she will probably receive cost-of-living adjustments, the potential for either a big promotion or large salary increase is slim. Her best chance for career advancement (the dean's position) was with CCRI and that failed, even with the support and backing of superiors. Considering the unfortunate reality that career advancement opportunity does not usually improve with middle age, the likelihood is that the Debtor's income will not increase substantially for the remainder of her career, i.e., she has probably plateaued at her professional level.

While the odds are that the Debtor's job status will not improve, her present and future financial situation does leave *some* room for payment of *some* of her student loan obligations, because she claims several expenses that I find in the circumstances are excessive. For example: $150 spending money; $100 haircuts and personal effects; $100 gifts; $100 recreation; and $140 transportation and gas (not including her car payment, car insurance and car repairs which are separate expenses). These expenses total $590 per month and Ms. Lamanna's explanation of their accuracy or necessity is vague, at best. Conservatively, I find that a reduction of $200 per month in these combined discretionary expenses is reasonable and would still permit the Debtor to maintain a comfortable standard of living. Also, for the past five years, Lamanna has received federal and state income tax refunds, averaging in excess of $3,800 per year. Given her stable employment and living situation, there is no indication that this will change. How the refunds were used has not been explained and no reason has been shown why the refunds should not be considered as part of the Debtor's disposable income. If the refunds are treated as disposable income, this gives the Debtor an additional $316 per month, which together with $200 per month from the discretionary items, enables the Debtor to pay $516 per month toward her student loan obligations, without undue hardship.

While the record is not clear on this, many student loans are extended for thirty years, which in Ms. Lamanna's case would extend well beyond her productive working life. With seventeen years until retirement, I find that an order requiring payment of student loans during the Debtor's productive work life is reasonable. *See Grigas,* 252 B.R. at 875. Accordingly, a seventeen year repayment period is ORDERED.[3]

Under the above order, to the extent that *some* of the twenty-four loans can be paid according to their terms, those loans are determined to be nondischargeable. The remaining loans are discharged, pursuant to Section 523(a)(8). Because I have not been provided with the terms or amounts of said loans, it is not possible for the Court to calculate which of the Debtor's student loans are determined to be nondischargeable, and which are discharged. Therefore, the application of the principles set forth herein is delegated to the parties, who should consider the payment terms of each loan, starting with the oldest loan first.[4] They should deduct the payment required to pay the oldest loan in full, according to its terms, from the limit set forth herein ($516/month), and continue chronologically with each subsequent loan. When the point is reached where there are insufficient funds to pay in full a given loan according to its terms, that loan and all subsequent loans are discharged. The parties shall submit an appropriate order within thirty (30) days.

Enter Judgment consistent with this Opinion.

---

**3.** Of course this Order is subject to modification should the Debtor's circumstances change significantly, one way or the other.

**4.** To start with the oldest loan first seems proper in this case, as all of the loans belong to the same creditor. In cases where different creditors are involved, this methodology may not be appropriate.