Nancy KELLY, Debtor.

Educational Credit Management
Corporation, Appellant,

v.

Nancy Kelly, Appellee.

BAP No. MW 03–029.
Bankruptcy No. 02–40158–JBR.
Adversary No. 02–04196–JBR.

United States Bankruptcy Appellate Panel
of the First Circuit.

July 21, 2004.

John F. White, Topkins & Bevans, Quincy, MA, on brief for the Appellant.

Nancy Kelly, pro se, on brief for the Appellee.

Before DE JESÚS, VAUGHN, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

KORNREICH, Bankruptcy Judge.

This matter is before us on appeal by Educational Credit Management Corporation ("ECMC") from the April 7, 2003 order (the "Order") of the United States Bankruptcy Court for the District of Massachusetts ("Bankruptcy Court" or "Court") determining the dischargeability of six of the Debtor's seven ECMC student loans under 11 U.S.C. § 523(a)(8).[1] The Bankruptcy Court decided that two loans totaling $10,225.31 were not dischargeable and that four loans totaling $63,109.87 were dischargeable.[2] We agree with the Bankruptcy Court that repayment of the four loans would impose an undue hardship on the Debtor and her dependants, and we affirm the Order. Because the Bankruptcy Court did not make a decision concerning the dischargeability of the seventh loan, we remand for disposition of that loan consistent with this opinion.

## BACKGROUND

Nancy Kelly (the "Debtor"/"Appellee") filed for protection under Chapter 7 of the Bankruptcy Code (the "Code") on January 8, 2002, and subsequently filed a complaint to determine the dischargeability of her student loans. The following facts were established at trial. The Debtor is a 41–year–old woman with a 17–year–old son and two teenaged foster children. The foster children, a brother and sister, came to live with the Debtor and her son in August of 2002. One of the foster children, Courtney, was the Debtor's goddaughter. The foster children began living with the Debtor at the request of a friend of the Debtor, and the children's adoptive mother.

---

1. Unless otherwise noted, all statutory references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

2. The Bankruptcy Court also decided that a judgment against the Debtor in favor of The Educational Resource Institute ("TERI") was dischargeable. No appeal was taken by that party.

The Debtor holds a Bachelor's Degree in education and a Juris Doctor degree from Suffolk University. To finance her education, she took out several student loans, represented by notes held by ECMC as follows: (1) a $4,000 loan disbursed 6/14/91; (2) a $7,500 loan disbursed 9/12/92; (3) a $7,500 loan disbursed 7/31/91; (4) a $1,000 loan disbursed 5/4/94; (5) a $10,000 loan disbursed 8/27/93; (6) a $4,000 loan disbursed 9/11/92; and (7) a $7,500 loan disbursed 8/27/93. The Bankruptcy Court was presented with a repayment schedule of the seven loans, individually and collectively, over periods of 15, 20 and 25 years. There was no evidence that these loans have been merged or consolidated. Four loans held by ECMC which were determined to be dischargeable are the subject of the present appeal.

The Debtor made five unsuccessful attempts to pass the Massachusetts bar exam, the last attempt having been made in 1996. At the time of trial, the Debtor worked three part-time jobs. Her primary job was driving a school bus, seasonal employment lasting from late August to late June, which she has done for about 7 years. She earned $14.10 per hour, and worked 20 to 22 hours per week. Her second job was as a teacher with the alternative night school program for the City of Fitchburg, Massachusetts, working 14 to 15 hours per week, and earning $23 per hour. Third, she served as an after-school teacher for the Memorial Intermediate School in Fitchburg, working approximately 12 hours per week at $25 per hour. The Debtor's second and third jobs were not very secure due to the question of ongoing funding for those positions.

The Debtor received a stipend from the state of $17.16 per day per child for the care of each of the two foster children. She also received a quarterly clothing allowance for each foster child of $288. She testified that the stipend and clothing allowance were insufficient to reimburse her fully for the expenses she incurs for their care.

The Debtor estimated at one time that her income for the year 2003 would be $56,000, and that her income for the two prior years was under $40,000, and about $32,700 respectively. According to the Debtor, her monthly expenses during the months prior to trial were $3,486. The Debtor did not maintain health insurance for herself or her son, although the two foster children did have medical coverage through Mass Health. She testified that she owed just under $1,000 to the Internal Revenue Service. She was paying $200 per month towards that obligation, but most of the payments were applied to penalties and fees. Additionally, the Debtor testified that her internet service charge was $44 per month, but would soon be reduced to approximately $21 per month.

Following trial, the Bankruptcy Court found the Debtor's current income to be volatile, but had been relatively constant at $30,000 per year. It also found that her expenses were exceedingly modest, that she had virtually no disposable income, and that her circumstances were not likely to change in the near future or in the long term. The Bankruptcy Court concluded that "the Debtor has some ability to pay her student loans, but that it would cause her undue hardship to pay all of her student loans collectively." Applying § 523(a)(8), it excepted from discharge ECMC Loan Nos. 1 and 4, totaling $10,225.31, and discharged ECMC Loan Nos. 2, 3, 5, and 6, totaling $63,109.87. The TERI loan(s), the amount of which is not part of the record on appeal, was discharged. There appears to have been no determination regarding ECMC Loan No. 7 in the amount of $15,702.82.

## JURISDICTION

Pursuant to 28 U.S.C. §§ 158(a) and (b), we may hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). A final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The Bankruptcy Court's order determining the dischargeability of six of the Debtor's student loan obligations is final as to those loans. *See Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 646–47 (1st Cir. BAP 1998).

## STANDARD OF REVIEW

Generally, we evaluate a bankruptcy court's findings of fact pursuant to the "clearly erroneous" standard of review and its conclusions of law *de novo*. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *see also* Fed. R. Bankr.P. 8013; *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997). Several circuits have concluded that an "undue hardship" determination is a question of law that requires the application of a *de novo* standard of review, but that the factual findings underlying that determination are reviewed under the clearly erroneous standard. *See, e.g., U.S. Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89 (5th Cir.2003); *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cir.2001); *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir.2001); *Tennessee*

*Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436 (6th Cir. 1998); *Woodcock v. Chemical Bank (In re Woodcock)*, 45 F.3d 363, 367 (10th Cir.), *cert. denied*, 516 U.S. 828, 116 S.Ct. 97, 133 L.Ed.2d 52 (1995); *In re Roberson*, 999 F.2d 1132, 1134 (7th Cir.1993); *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987).

■ The First Circuit has not adopted its own specific approach to the review of § 523(a)(8) determinations. Therefore, we will apply the *de novo* standard to the legal conclusion of undue hardship, and the clearly erroneous standard to findings of fact.

## DISCUSSION

ECMC raises two primary arguments on appeal. First, it asserts that the Bankruptcy Court should have applied the *Brunner* test to the Debtor's nondischargeability complaint. Second, it argues that the Bankruptcy Court erred in concluding that the Debtor had met her burden of proving that the nondischargeability of the student loans would cause her an undue hardship.

■ Pursuant to § 523(a)(8),[3] student loans are dischargeable in bankruptcy if the failure to do so would cause a debtor and his or her dependents "undue hardship." 11 U.S.C. § 523(a)(8). Undue hardship is measured as of the date of trial. *Pollard v. Superior Cmty. Credit Union (In re Pollard)*, 306 B.R. 637 (Bankr.D.Minn.2004). The burden of proof by a preponderance of the evidence

---

**3.** Section 523 provides in relevant part:
(a) [a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
　(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a gov-

ernmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.
11 U.S.C. § 523(a)(8).

is upon a debtor. *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (employing a preponderance of the evidence standard to the issue of dischargeability).

Congress did not define "undue hardship." *See generally United Student Aid Funds, Inc. v. Pena (In re Pena),* 155 F.3d 1108, 1111 (9th Cir.1998); *Dolan v. American Student Assistance (In re Dolan),* 256 B.R. 230, 237 (Bankr.D.Mass.2000) (noting that "[o]ther courts have frequently pointed out that Congress, despite articulating a standard for excepting student loans from the discharge exception, did not define or otherwise guide the courts on what constitutes 'undue hardship' "). We look to the text of the statute to determine the congressional intent, and to legislative history only if the text is ambiguous. Where statutory language is plain or unambiguous, " 'the sole function of the court is to enforce it according to its terms.' " *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. U.S.,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). Plain meaning is therefore conclusive, " 'except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *Id.* at 242, 109 S.Ct. 1026 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).

While the Code offers little guidance as to what constitutes "undue hardship" for purposes of § 523(a)(8), the legislative history is informative. Congress drafted the Code to provide a discharge procedure that enables honest but unfortunate debtors the ability to reorder their affairs and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. at 287, 111 S.Ct. 654 (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). However, Congress elected to exclude certain obligations from the general policy of discharge based upon the public policy conclusion that the availability and solvency of educational loan programs outweighs a debtor's need for a fresh start. *See Report of the Comm'n on the Bankruptcy Laws of the United States,* H.R. Doc. No. 137, 93d Cong., 1st Sess. (1973). Thus, "Congress enacted 11 U.S.C. § 523(a)(8) in an effort to prevent abuses in and protect the solvency of educational loan programs." *In re Pelkowski,* 990 F.2d 737, 743 (3d Cir.1993) (quoting *In re Merchant,* 958 F.2d 738, 742 (6th Cir.1992)).

Courts have articulated different tests for aiding in the determination of undue hardship. The two primary tests are the totality of circumstances test, *see, e.g., Lamanna v. EFS Servs., Inc. (In re Lamanna),* 285 B.R. 347 (Bankr.D.R.I.2002), and the *Brunner* test, *see Brunner,* 831 F.2d at 395.

▪ The totality of the circumstances test has been adopted by the Eighth Circuit, *see Long v. Educ. Credit Mgmt. Corp. (In re Long),* 322 F.3d 549, 553 (8th Cir. 2003), and by several bankruptcy courts in this Circuit. *See Lamanna,* 285 B.R. at 353; *Dolan,* 256 B.R. at 238; *In re Kopf,* 245 B.R. 731 (Bankr.D.Me.2000). It involves "an analysis of (1) the debtor's past, present, and reasonably reliable future financial resources; (2) calculation of the debtor's and his dependents' reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding that particular bankruptcy case." *Kopf,* 245 B.R. at 739 (quoting *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen),* 232 B.R. 127, 139 (8th Cir. BAP 1999)).

The *Brunner* test, originated by the Second Circuit, has been adopted by the Third, Fourth, Fifth, Seventh, Ninth, Tenth and Eleventh Circuits. *See Educational Credit Mgmt. Corp. v. Polleys,* 356 F.3d 1302 (10th Cir.2004); *United States Dep't of Educ. v. Gerhardt (In re Gerhardt),* 348 F.3d 89 (5th Cir.2003); *Hemar Ins. Corp. of Amer. v. Cox (In re Cox),* 338 F.3d 1238 (11th Cir.2003); *Ekenasi v. The Educ. Res. Inst. (In re Ekenasi),* 325 F.3d 541 (4th Cir.2003); *In re Pena,* 155 F.3d at 1108; *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298 (3d Cir.1995), *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996); *In re Roberson,* 999 F.2d 1132 (7th Cir.1993). It has also been adopted by some courts in this Circuit. *See, e.g., Garrett v. New Hampshire Higher Educ. Assistance Found. (In re Garrett),* 180 B.R. 358 (Bankr.D.N.H.1995). The *Brunner* test requires a debtor to make a three-part showing that (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) the debtor has made good faith efforts to repay the loans. *Brunner,* 831 F.2d at 396. The significant difference between the *Brunner* approach and the totality of the circumstances test is the requirement in *Brunner* that a debtor demonstrate that she has made good faith efforts to repay the educational loans at issue.

The Bankruptcy Court applied the totality of circumstances test. ECMC views the employment of that test as reversible error. We disagree for two reasons: First, this argument was not raised below. The parties' Joint Pretrial Memorandum indicated that the totality of the circumstances was the appropriate test. ECMC's trial brief analyzed the Debtor's situation under the totality of the circumstances test, and did not argue that any other test should apply. The trial transcript reveals no argument by ECMC for application of any test other than totality of the circumstances. The first time ECMC argues for application of the *Brunner* test is in its reply brief. We will not consider an argument raised for the first time on appeal. *See Amcel Corp. v. Int'l Exec. Sales, Inc.,* 170 F.3d 32, 35 (1st Cir.1999). Second, in the absence of controlling authority in this Circuit, the Bankruptcy Court was free choose its own approach to evaluate undue hardship.

We now turn to the Bankruptcy Court's application of the totality of the circumstances test.

*Financial resources*

The Bankruptcy Court found that the Debtor's income had been relatively constant at about $30,000 per year. There is evidence to support this finding. The Debtor testified at trial that her gross earnings during 2002 were under $40,000, and her income for 2001 was about $32,700. ECMC points out that the Debtor at one time estimated that she might earn up to $56,000 during 2003 and that her income for that year could exceed $60,000 if the Debtor "maintains her current employment or comparable employment through the summer." We are mindful of that evidence; nonetheless, we see no reversible error under the clearly erroneous standard. The Bankruptcy Court was presented with evidence of the uncertainty of two of the Debtor's three jobs, and appears to have based its determination on the Debtor's past earnings rather than on present or potential future earnings. The Debtor's one reliable job gives her an annual salary of less than

$20,000. Together the two uncertain jobs would provide additional income of approximately $30,000 on an annual basis. Deducting that income from the high estimate of $60,000 would result in an annual income of about $30,000. Therefore, we find no error in the Bankruptcy Court's conclusion that the Debtor's income has been relatively constant at about $30,000. We will not substitute our judgment for that of the Bankruptcy Court concerning the Debtor's income, because it was in a better position to evaluate the evidence. "If the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Amick v. Bradford (In re Bradford),* 112 B.R. 347, 352 (9th Cir. BAP 1990).

■ ECMC also suggests that (1) the Debtor has unreasonably limited the geographic scope of her employment search, (2) and she has not utilized her law degree. Yet, ECMC presented no evidence in support of those arguments. There is nothing in the record to suggest that the Debtor would have been successful had she sought employment in a different area, or that such other employment would have improved her ability to make student loan payments. Similarly, no evidence was presented indicating that she passed up job opportunities in the legal field. This Debtor was not deliberately underemployed. She worked three jobs to support her family.

*Necessary living expenses*

■ ECMC asserts that the Debtor spends too much for cable television, cell phone, internet access, recreation, and gifts. The suggestion is that the loss of such things would not be an undue hardship. The evidence on this point is scanty, but it does show that the Debtor drives a school bus, and uses a cell phone to keep in contact with her son and foster children. She subscribes to cable television, because it is one of the few forms of entertainment available to her children.

The record also shows that the Debtor expects her monthly internet bill to be reduced from $44 to $21, and that at some point in the near future her obligation to the IRS will be satisfied. On the other hand, the Debtor's rent may increase because of her landlord's plan to sell the building where she resides. The Bankruptcy Court did not make any specific finding that any of the Debtor's expenses were unreasonable. It simply determined, based on the evidence presented, that she had sufficient resources to repay two of ECMC's loans, totaling $10,225.31. We find no clear no error in the Bankruptcy Court's finding that the Debtor's expenses are modest and indicate a minimal standard of living.

*Other relevant circumstances*

■ ECMC insists that the Debtor is able to repay all seven loans under one of its extended repayment options. Under *Brunner,* the Debtor's failure to make a good faith effort to repay the loans would result in a conclusion of nondischargeability. Under the totality of circumstances approach, a debtor's failure to make a good faith repayment effort is an additional factor to be weighed, but not necessarily a determinative factor.

■ The Bankruptcy Court did not discharge Loan Nos. 1 and 4. The monthly payments on those two loans would range from $61.59 and $82.48, depending upon the repayment term. The Bankruptcy Court implicitly determined that no undue hardship would result from the repayment of those debts. Its failure to order repay-

ment of four others loans was not reversible error.

An educational loan is not discharged "unless excepting *such debt* from discharge ... will impose an undue hardship on the debtor and the debtor's dependants." 11 U.S.C. § 523(a)(8) (emphasis added). A "debt" is defined as a liability on a claim. 11 U.S.C. § 101(12). A "claim," in turn, means a "right to payments, whether or not such rights is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5). The use of the singular "such debt" in the statute suggests that a § 523(a)(8) analysis should be performed with respect to each educational loan as a separate undertaking.

In other jurisdictions where the issue of dischargeability of multiple student loans has been addressed, three different approaches have emerged: the strict approach, the flexible approach, and the hybrid approach. Courts applying the "strict approach" hold that the plain language of § 523(a)(8) requires an all or nothing treatment regarding student loan dischargeability—a debtor's student loans are either dischargeable *in toto,* or they are not. *See Grigas v. Sallie Mae Servicing Corp. (In re Grigas),* 252 B.R. 866, 871 (Bankr.D.N.H.2000). Courts adopting an opposing view conclude that § 523(a)(8) does allow a partial discharge, and that a debtor's student loans may be partially discharged in a variety of ways, including the discharge of a partial principal amount. *Id.* Courts adopting the hybrid approach agree with the strict approach, insofar that it holds that a *single* educational debt cannot be restructured so that only a portion is discharged. *Id.* at 872–73. Those courts conclude that, in applying § 523(a)(8), a debtor's student loans need not be aggregated, and that § 523(a)(8)

may be applied on an independent basis to each loan.

Based on the plain meaning of "such debt" in § 523(a)(8), we conclude that the Bankruptcy Court correctly treated the loans as several rather than joint, in the absence of any evidence that the student loans were consolidated. We find no error in its determination that two of the student loans should not be discharged and that repayment of four others would impose an undue burden on the Debtor and her dependants.

Another relevant circumstance is the Debtor's decision to care for two foster children. Nothing in the record indicates that the foster children were taken on by the Debtor to avoid repayment of her student loans. The evidence shows that the Debtor took in her goddaughter, Courtney Brock, and Courtney's brother David when the children's former foster parent was unable to care for them. The funds the Debtor receives from the state are insufficient to fully reimburse her for the expenses she incurs caring for them. The foster children cost the Debtor an estimated two to three hundred dollars a month beyond the money she receives from the state. The children were aged 13 and 15 at the time of trial, so the Debtor could reasonably expect those related expenses to continue for three to five years.

Having reviewed the Bankruptcy Court's factual findings that the Debtor has an income which is volatile but has been relatively constant at about $30,000 per year, exceedingly modest expenses, and virtually no disposable income, and that the situation is not likely to change, we find no clear error. Those findings lead inexorably to the legal conclusion that requiring the Debtor to repay over $80,000 in student loans would cause her an undue hardship, and we therefore, after *de novo* review, find no error in the Court's deci-

sion to discharge four of the Debtor's student loans with balances totaling over $63,000.

## CONCLUSION

The Bankruptcy Court did not err in determining that four of the seven student loans held by ECMC would constitute an undue hardship for her if not discharged. The Order of the Bankruptcy Court is hereby AFFIRMED as it concerns the dischargeability of four of ECMC's loans. Apparently the Bankruptcy Court inadvertently did not decide the dischargeability of the seventh ECMC loan, and the matter is therefore REMANDED to the Bankruptcy Court for consideration of the dischargeability of that loan.