**In re Troy SMITH and Elizabeth J. Smith, Debtor.**

**Troy Smith and Elizabeth J. Smith, Plaintiffs,**

**v.**

**Educational Credit Management Corp., and Connecticut Student Loan Foundation, Defendants.**

**Bankruptcy No. 01–10486(CJK). Adversary No. 02–01113(JBR).**

United States Bankruptcy Court, D. Massachusetts.

Feb. 3, 2005.

Carl E. D'Angio, Jr., Waltham, MA, for Troy Smith and Elizabeth J. Smith, Plaintiffs.

R. Richard Croce, Rocky Hill, CT, for CT Student Loan Foundation, Defendant.

John F. White, Braintree, MA, for Educational Credit Management Corp., Defendant.

## MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court on Troy and Elizabeth Smith's ("Debtors") complaint alleging that certain student loans owed to Educational Credit Management Corporation ("ECMC") and Connecticut Student Loan Foundation ("CSLF") are dischargeable insofar as the repayment of such loans constitutes an undue hardship pursuant to § 523(a)(8) of the Bankruptcy Code [Docket # 1]. The Court held an evidentiary hearing and took this matter under advisement. Based on the record before the Court, the Court makes the following findings of fact and rulings of law pursuant to Fed. R. Bankr.P. 7052.

## FACTS

Debtor Troy Smith has two outstanding student loans guaranteed by CSLF. The total amount due on these two loans as of January 4, 2005 is $8,853.67, with a per diem of $0.81. Debtor Elizabeth Smith has one outstanding student loan guaranteed by ECMC, the balance of which as of January 4, 2005 is $29,467.06, with a per diem of $3.84. Debtors owe a combined total of $38,320.73 on these three student loans, increasing at $4.65 per day.

The uncontroverted testimony reveals that neither Debtor is currently able to satisfy the student loan obligations at this time. The Debtors combined monthly income barely covers the reasonable expenditures incurred by the family unit. Mr. Smith's income is roughly $600 per week. Mrs. Smith works part-time cleaning houses and makes approximately $62.50 per week. Combined, Debtors approximate monthly income is $2,433.[1] No funds are available for medical or dental expenses for the Debtors[2], neither Debtor has life insurance, and there is no provision in the budget for replacement of the aging motor vehicles owned by the parties. The Debtors live a modest, non-extravagant, life style. The uncontroverted testimony demonstrates that the Debtor's approximate monthly expenses are as follows:

(1) Rent $1,500.00

(2) Heat/Hot Water $80.00

(3) Water $10.00

(4) Electric $114.00

(5) Food $250.00

(6) Clothing (for three) $25.00

(7) Auto Expenses (gas/maintenance/excise tax/car insurance) $308.00

(8) Charitable/Church $20.00

(10) Recreation $20.00

(11) Telephone $60.00

(12) Cell Phone $30.00

(13) Cable TV $40.00

(14) Medical $0.00[3]

TOTAL: $2457.00

The Debtors' 5 year old son suffers from juvenile diabetes and other maladies which have occupied Mrs. Smith's full-time attention for the past several years. Trial testimony suggests major improvements will

---

**1.** The Debtor's pre-tax monthly income is approximately $2,850 ($662.50 × 4.3). While the precise effective tax rate is indiscernible at this moment, for the purposes of calculating Debtors adjusted income the Court approximates a deduction of $5,000 per year in taxes (federal, state, and social security). Using this figure (14.6% tax rate) the court estimates a monthly income of $2,433 per month.

**2.** Minor son is covered by Mass Heath; Debtors are not. It is unknown whether and at what point coverage could be revoked due to Debtors increase income or other circumstances.

**3.** The Court is not willing to speculate as to any future medical costs but is well aware that this figure will not remain at $0.00 indefinitely.

gradually occur as the son matures. In the not too distant future Mrs. Smith should thus be able to enter the work force if not full time, at least for 20–30 hours per week.

Assuming a modest pay of $15.00 per hour for 25 hours per week, Mrs. Smith will gross $375 per week. Allotting 25% of this income to tax, Mrs. Smith will take home $281.25. Accordingly, Mrs. Smith's post-tax income will be approximately $1200 ($281.25 × 4.3) per month once she returns to work. Providing for additional family needs of $500 a month for medical insurance, $150 a month for dental insurance, $100 a month for life insurance, and $250 a month in other reasonable expenses—totaling $1000—Debtors can expect an excess in the future of $200 per month. Taking this excess for a reasonable period of time, Debtors will have access to an additional $12,000 over the next five years.

■ Even with access to these additional monies Debtors will be unable to pay back all three student loans without suffering undue hardship. Taking the ECMC loan alone, should Debtors be given thirty years to repay the debt they will still owe over $14,200 over the next five years (ECMC submitted with its trial memorandum figures that would require payments ranging from $237.10 per month over thirty years to $298.87 per month for fifteen years). As I have written in previous decisions, undue hardship does not require poverty or hopelessness. *See In re Coutts,* 263 B.R. 394, 398 (Bankr.D.Mass.2001).

*DISCUSSION*

■ Congress has created an imperfect situation where courts have to guess what the future will bring—and cobble together an equitable definition of undue hardship—balancing the "fresh start" concept on one hand, and Congress' clear intent to make discharge of student loans difficult.

I have previously written on partial discharge of student loans and have been affirmed by the B.A.P. on at least one occasion. *See Educational Credit Management Corp. v. Kelly (In re Kelly),* 312 B.R. 200 (1st Cir. BAP 2004). Based on my analysis of the financial affairs and prospects of the Debtors, whether I use the "totality of circumstances" test I have embraced in the past or reconsider and adopt the *Brunner* test as urged by ECMC, I come to the same conclusion: it would be an undue hardship for the Debtors to pay their entire student loan debt. I thus turn to the partial discharge approach I adopted in the past and also examine the approach urged by ECMC, suggesting that I can partially discharge a single loan.

■ ECMC urges the Court to adopt the rationale used in the Ninth Circuit, whereby individual student loans can be discharged in part. *See Saxman v. Educational Credit Mgmt. Corp. (In re Saxman),* 325 F.3d 1168 (9th Cir.2003). I do not agree that "a bankruptcy court may exercise its equitable authority to partially discharge student debt" under its § 105(a) powers. *Id.* at 1173—75. I find that the "such debt" language in § 523(a)(8) is clear in speaking to a single debt. Therefore, I do not believe § 105(a) can be interpreted to expand the limits of this section to include partial discharge of a single debt. The First Circuit Court of Appeals states:

> Section 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand. The authority bestowed thereunder may be invoked only if, and the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code.

*Jamo v. Katahdin Federal Credit Union* (*In re Jamo* ), 283 F.3d 392, 403 (1st Cir. 2002).

 I find the superior approach to be the "hybrid" approach, whereby the Court will examine Debtors ability to pay back their student loans on a loan-by-loan basis. *See In re Grigas,* 252 B.R. 866 (Bankr.D.N.H.2000); *In re Lamanna,* 285 B.R. 347 (Bankr.D.R.I.2002); *Educational Credit Mgmt. Corp. v. Kelly (In re Kelly),* 312 B.R. 200 (1st Cir. BAP 2004). The Court finds that the Debtors have some ability to pay back their student loans, but that it would cause them an undue hardship to pay all of their loans collectively. Adopting the hybrid approach and the rationale and methodology I set forth in *In re Coutts,* 263 B.R. 394 (Bankr.D.Mass. 2001), assessing all of the information that is before the Court concerning the Debtor's financial ability, I find that: (1) Debtors' past, present, and reasonably reliable future financial resources; (2) Debtors' reasonably necessary living expenses, and (3) Debtors' income potential prevent payment of all three of the student loans at issue. I find the Debtors can make payments on the two student loans held by CSLF, totaling $8,853.67 as of January 4, 2005. Conversely, I find the Debtors do not have the ability to pay back the $29,467.06 owed to ECMC without suffering undue hardship.

*CONCLUSION*

For all of the foregoing reasons, Mrs. Smith's debts to Educational Credit Management Corporation are hereby deemed dischargeable as the Debtors have satisfied their burden of proof by demonstrating undue hardship pursuant to § 523(a)(8) of the United States Bankruptcy Code. The balance of Mr. Smith's debts to Connecticut Student Loan Foundation is non-dischargeable as the Court finds that payment of these loans will not cause the Debtors an undue hardship.

IT IS SO ORDERED.