## In re Mildred RICHARDSON, Debtor.

### Mildred Richardson, Plaintiff,

### v.

### United States Department of Education, Defendant.

### Bankruptcy No. 03–42792 JBR.
### Adversary No. 03–04239.

United States Bankruptcy Court, D. Massachusetts.

April 29, 2005.

---

Marina R. Matuzek, Worcester, MA, for Debtor.

## MEMORANDUM ON DISCHARGE OF STUDENT LOAN OBLIGATIONS

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court on Mildred Richardson's ("Debtor") complaint alleging that a consolidated student loan owed to the United States Department of Education ("USDOE") is dischargeable insofar as the repayment of such loan constitutes an undue hardship pursuant to § 523(a)(8) of the Bankruptcy Code. The Court held an evidentiary hearing and took the matter under advisement. Based on the record before the Court, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

*FACTS:*

On April 11, 2000, the Debtor received a Federal Direct Consolidation Loan, consolidating several smaller student loans. The amount of consolidated debt at that time

totaled $33,978.65. The total amount currently owed is substantially in excess of the original balance. The relevant facts are not disputed.

The Debtor is a 56 year-old woman with a history of health problems. She was diagnosed with cervical cancer in November 2002 for which she was treated surgically and with intense radiation therapy. While doctors remain confident they successfully treated the cancer, there exists a risk that the cancer will recur. In addition, the Debtor's medical treatment has resulted in numerous side effects.[1]

The Debtor is employed as a registered nurse through a social service agency. She presently works twenty-four hours per week, earning on average $464.23 per week after taxes. She has attempted to pick up additional shifts, but has been unsuccessful due to a shortage of cases at the agency through which she is employed and other agencies she has contacted. She has approximately $1,000 in savings and an additional $1,000 in an I.R.A.

The Court concludes, after reviewing the Debtor's testimony, both on direct and cross-examination (as well as her Schedule J, admitted into evidence as part of Defendant's Exhibit 5), that the Debtor's monthly expenses are approximately as follows:

Rent $550.00/month

Electricity $15.00/month

Heat $60.00/month (average)

Cable $14.00/month

Telephone $50.00/month

Food, Cleaning Supplies, etc. $250.00/month

Transportation costs (fuel, maintenance and repairs) $220.00/month [2]

Car Payments $273/month [3]

Car Insurance $67.00/month

Health Insurance $440/month

Renter's Insurance $15.00/month

Malpractice Insurance $10.00/month

Continuing Education $6.50/month

Uniforms $8.50/month

Clothing $8.50/month

Laundry/Dry Cleaning $30.00/month

Copays for Doctor visits and deductibles $200.00/month [4]

Prescription Drugs $40.00/month [5]

Postpetition Loan $93/month (no testimony on how long)

---

1. Side effects from the radiation are ongoing and include chronic colitis, diet restrictions and persistent and periodic pain. The radiation also caused or exacerbated other maladies, including fibromyalgia and asthma.

2. The Debtor testified that she drives a 1998 Saturn with 120,000 miles that is in poor condition. Repair expenses vary by month. Based on her testimony, the Court calculated her estimated fuel expenses as $120.00/month and her estimated maintenance/repair costs to be $100.00/month.

3. The Debtor has ten remaining monthly payments of $273.00 each on her rapidly deteriorating 1998 Saturn. The Court finds that, in the event the Debtor's vehicle becomes undriveable, the monthly cost associated with replacing the Saturn with another vehicle would be higher than this number.

4. The Debtor testified that she underwent a colonoscopy. The cost of this procedure was covered by her insurance provider except for a deductible of $500.00 which the Debtor paid from her own funds. Spread out over a 12–month period, the Debtor incurred expenses from this deductible of $41.66/month. The Court views this as non-recurring, but given the Debtor's health issues, some reasonable deductibles must be anticipated.

5. The Debtor's Health Insurance does not cover prescription medication. According to her testimony, she requires weekly shots for the treatment of her allergies and drugs for the treatment of asthma. Her prescriptions frequently go unfilled.

Pet care $20.00/month
Recreation $10.00/month [6]
Charitable Contributions $10.00/month

TOTAL: $2,390.50

## DISCUSSION

■ The relevant standard to be applied by this Court is whether an undue hardship exists based upon the evidence submitted by the Plaintiff at the time of trial as to 1) the Plaintiff's past, present, and reasonable future financial resources; 2) the Plaintiff's reasonably necessary living expenses; and 3) other relevant facts or circumstances unique to Plaintiff's case which would prevent the Plaintiff from paying her student loans while maintaining a minimal standard of living even when aided by a Chapter 7 discharge of other pre-petition debts. *Dolan v. American Student Assistance,* 256 B.R. 230, 238 (Bankr.D.Mass.2000).

■ Based on the Court's analysis of the financial affairs and prospects of the Debtor, whether using the "totality of the circumstances" test embraced in the past or reconsidering and adopting the *Brunner* test [7], the Court comes to the same conclusion: it would be an undue hardship for the Debtor to satisfy her entire student loan obligation, regardless of which expense figures are used. The consolidated loan is at a fixed interest rate of 8.25%, and there exists no future opportunity for a reduced interest rate. Although the government's evidence was vague on this point, it appears that the monthly payment required of the Debtor under the consolidated loan arrangement is $369.41. Further, the Debtor's lifestyle appears to the Court to be modest even using her expense figures. Comparing her expenses to her income, it is clear the Debtor lacks sufficient funds at the end of each month to meet her consolidated student loan obligations without suffering an undue hardship.

Moreover, as described *supra,* the Debtor is currently working twenty-four hours per week and takes home $464.23 per week, or approximately $2,011.66 per month, after taxes. At this rate, even if the Debtor were to work four days, or 32 hours per week, her weekly take home pay would be approximately $618.97 per week, or approximately $2,682.20 per month. Based on the expense figures listed *supra,* after payment of all reasonable monthly expenditures, this would give the Debtor a surplus of $286.70 per month to pay her student loan obligations. Thus, even assuming the Debtor were able to procure and sustain a 32 hour work week, a possibility the Court believes is unlikely given the unavailability of additional hours and the Debtor's age and health problems, the Court finds that the Debtor would not have sufficient funds at the end of each month to pay her student loan obligation without suffering an undue hardship. If she continues to work 24 hours per week at the same rate of pay, an eventuality the Court believes to be more realistic, she would not even have enough to pay her reasonable monthly expenditures. Addi-

6. Although the Debtor testified that she spends next to nothing on herself, the Court is of the opinion that this expense is probably higher.

7. The *Brunner* test requires the Debtor to show that (1) the Debtor is unable, based upon her current income and expenses, to maintain a "minimal" standard of living if she must repay the student loan; (2) other existing circumstances indicate the state of affairs probably will continue for a significant portion of the repayment period of the student loan; and (3) the Debtor has, in good faith, tried to repay the loan. *Brunner v. New York,* 831 F.2d 395, 396 (2d Cir.1987).

tionally, as described more fully *infra*, because her debt is consolidated, this Court lacks the authority under these circumstances to partially discharge her student loan obligation.

■ This Court has previously permitted partial discharge of individual student loans and has been affirmed by the Bankruptcy Appellate Panel of the First Circuit on at least one occasion. See *Educational Credit Management Corp. v. Kelly (In re Kelly)*, 312 B.R. 200 (1st Cir. BAP 2004). Other courts in this circuit have also ruled in favor of this "hybrid" approach, whereby individual student loans may be partially discharged on a loan-by-loan basis. *See In re Grigas*, 252 B.R. 866 (Bankr.D.N.H. 2000); *In re Lamanna*, 285 B.R. 347 (Bankr.D.R.I.2002). Unlike the aforesaid decisions, the individual student loans at issue in this case were consolidated into one. As such, the Court must consider here whether it would be an undue hardship for the Debtor to pay the entire consolidated debt rather than a portion thereof. This Court recently confronted the question of whether a bankruptcy court has the authority to partially discharge a consolidated loan in *Smith v. Educational Credit Management Corp.*, 324 B.R. 16 (Bankr.D.Mass.2005). In *Smith*, this Court declined to extend the hybrid approach to partially discharge a single debt, ruling that "a bankruptcy court may [not] exercise its equitable authority to partially discharge student debt under its § 105(a) powers" because the " 'such debt' language in § 523(a)(8) is clear in speaking to a single debt. Therefore, this Court does not believe § 105(a) can be interpreted to expand the limits of this section to include partial discharge of a single debt." *Id.* at 19–20.[8] As this Court found this logic to

be sound in *Smith* and sees no reason to repudiate it today, the Court must determine in this case whether it would be an undue hardship for the Debtor to satisfy her entire consolidated student loan obligation based on the totality of the circumstances.

The Court concludes that, even assuming a slight growth in the Debtor's income, a possibility that is questionable at best given her uncontroverted testimony, poor health and the realities of the nursing profession in the geographic area in which she lives, to force the Debtor to pay off the entire consolidated loan would cause her to suffer an undue hardship. As such, the Debtor has met her burden under 11 U.S.C. § 523(a)(8) and her consolidated student loan is hereby deemed dischargeable.

*CONCLUSION*

Having concluded that the flexibility of the hybrid approach to partially discharge individual student loans is inapplicable to a single consolidated debt such as the loan at issue here and that the Debtor does not have the ability to pay back the entire consolidated debt owed to the United States Department of Education absent undue hardship, the debt so owed is dischargeable.

A separate Order will issue.

---

**8.** The argument that the hybrid approach to partially discharge student loans in inapplicable to cases in which individual loans have

been consolidated was advanced by the government in the instant case.