In re Marilyn Ann **KETTLER**, Debtor.

Marilyn Ann Kettler, Plaintiff,

v.

**Great Lakes Higher Education Serving Corp., Defendant.**

Bankruptcy No. 99–42015.
Adversary No. 00–3145.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 18, 2000.

Liza Greene, Houston, TX, for Debtor.

## MEMORANDUM OF DECISION ON DEBTOR'S COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF STUDENT LOANS

WILLIAM R. GREENDYKE, Bankruptcy Judge.

On September 14, 2000, the above-styled adversary came before the Court for hearing. At the hearing, evidence was presented and argument was heard. At the conclusion of the trial, the Court took the matter under advisement. In this adversary proceeding, Marilyn Kettler (the "Debtor") seeks to discharge approximately $19,000 of government guaranteed student loans under § 523(a)(8) of the Bankruptcy Code on the grounds that repayment of the loans will constitute an undue hardship. This case presents the question of whether a single debtor with no dependents and some health problems limiting her working ability is entitled to discharge her student loans because her expenses are greater than her income. After researching the applicable law, the Court concludes that Marilyn Kettler is entitled to discharge pursuant to § 523(a)(8) of the Bankruptcy Code. In support of this conclusion, the Court makes the following findings of fact and conclusions of law. To the extent a finding is more properly characterized as a conclusion, it should be considered as such; to the extent a conclusion is more properly characterized as a finding of fact, it should be considered as such.

### FINDINGS OF FACT

Between August 1993 and May 1995, the Debtor attended Angelo State University. During the course of her study, she borrowed approximately $21,500.00 in guaranteed student loans from the Navy Federal Credit Union. Upon graduation, she received a nursing degree and in January 1996, started making installment payments towards her student loans. She continued to make payments of approximately $250 per month until her bankruptcy filing in December, 1999. On November 20, 1996, the Debtor was involved in an automobile collision and as a result of injuries sustained from this accident, the Debtor ceased working as a nurse. The Debtor testified she suffers from cervical strain which may serve to limit her working ability. The Debtor asserts she takes anti-depressant medication and she has trouble with her hearing and verbal communication skills. Moreover, the Debtor asserts that she sometimes has problems with her memory which has made her apprehensive about applying for most jobs. In June 1999, the Debtor moved to Washington State to live with her son. In October 1999, she secured part-time employment with Barnes & Noble Booksellers at a rate of $7.00 per hour. As of the date of the filing of the bankruptcy petition, the Debtor stipulated that she is indebted to the Navy Federal Credit Union [hereinafter "ECMC"] in the amount of $19,392.05, which is the subject of this dispute.

The Debtor, a 60 year-old single woman with no dependents, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 17, 1999. The Debtor argues, given her age and health problems, she is entitled to a discharge of her student loans under 11 U.S.C. § 523(a)(8). The Debtor contends that her average current income is $700 per month while her current minimum monthly living expenses are $796. The Debtor also contends she is physically incapacitated which limits her ability to generate any additional income for purposes of meeting her monthly living expenses. Thus, the Debtor argues that she cannot maintain, based on current income and expenses, a minimal standard of living if forced to repay the loans; that her current financial state is likely to persist for a

significant period of time due to her age and disabilities; that she has made a good faith effort to repay the loans; and that the payment of the balance of the student loans owed to ECMC will impose an undue hardship on her.

The Debtor and ECMC agree that the applicable law is Bankruptcy Code Section 523(a)(8)(B) and *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir.1987). Accordingly, the Debtor argues that she has met the *Brunner* standard and is entitled to discharge the student loan debt. ECMC argues that the *Brunner* standard has not been met because the Debtor has failed to present evidence establishing that she is unable to maintain a "minimal standard of living." Further, ECMC argues that at most the Debtor's situation is an example of an ordinary hardship rather than an undue hardship, and Debtor is not completely disabled from working in her profession. ECMC finally argues that the Debtor has not exhausted all of her possibilities for increasing her income.

### CONCLUSIONS OF LAW

The dischargeability of student loans is determined by section 523(a)(8) of the Bankruptcy Code. Section 523(a)(8) of the Bankruptcy Code provides:

A discharge under 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8) (West 1999).

■ "Undue hardship", within the meaning of 11 U.S.C. § 523(a)(8), has not been defined by the Bankruptcy Code nor has it been addressed by the U.S. Supreme Court or the U.S. Court of Appeals for the Fifth Circuit. However, a review of case law demonstrates that the trend is toward the adoption of the standard set forth by the Second Circuit. In *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987), the Second Circuit set forth the standard for dischargeability based on an undue hardship:

"[U]ndue hardship" requir[es] a three-part showing: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. *See In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993); *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359–60 (6th Cir.1994) cert. denied, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995); *Ammirati v. Nellie Mae, Inc. (In re Ammirati)*, 187 B.R. 902, 905–07 (D.S.C.1995); *Cobb v. Univ. of Toledo (In re Cobb)*, 188 B.R. 22, 23–24 (Bankr. N.D.Ohio 1995); *Stebbins–Hopf v. Texas Guaranteed Student Loan Corp.*, 176 B.R. 784, 786 (Bankr.W.D.Tex.1994); *Coveney v. Costep Servicing Agent*, 192 B.R. at 142.

■ The first prong of the Brunner test requires that there be an examination of the debtor's current financial condition to see if payment of the loans would cause the debtor's standard of living to fall below the standard minimally necessary to maintain support of the debtor and her dependents. *See Roberson*, 999 F.2d at 1135. The Debtor must establish that she "cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to

repay the loans." *Stebbins–Hopf* at 786. In fact, the first prong is a "threshold matter which must be met before the Court examines the next two prongs." *Id.* Congress clearly intended this higher standard of dischargeability because "[e]ducational loans are different than most loans in that they are made without business considerations, without security and without co-signers...." *In re Roberson*, 999 F.2d at 1135 (*citing* H.R. REP. NO. 595, 95TH CONG., 1st Sess. 133 (1977)), *reprinted in* 1978 U.S.C.C.A.N. 5787, pp. 5963, 6094. Thus, it is incumbent on the debtor to, at the very least, "[demonstrate] that ... [s]he is unable to earn sufficient income to maintain [her]self ... and to repay the educational debt." *In re Roberson*, 999 F.2d at 1135 (quoting COMM'N ON THE BANKR. LAWS OF THE UNITED STATES, REPORT, H.R. DOC. NO. 137, 93D CONG., 1st Sess., Pt. II, 140 n. 15 (1973)).

█ The second prong of the Brunner test "requires that the debtor demonstrate that unique or exceptional circumstances exist, such as illness, lack of job skills, large numbers of dependents, or a combination of these." *In re Mathews*, 166 B.R. 940, 944 (Bankr.D.Kan.1994). Whether a debtor's debt may be excepted from discharge "should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Mathews*, 166 B.R. at 944 (quoting *Roberson*, 999 F.2d at 1136 and *Briscoe v. Bank of New York*, 16 B.R. 128, 131 (Bankr. S.D.N.Y.1981)). The second prong implicates that there must be a showing by the debtor that his financial condition is not only devastating, but is likely to exist for a substantial portion of the repayment period. *See Roberson*, 999 F.2d at 1135.

█ Once the debtor has satisfied the first two prongs of the Brunner test, the third prong must then be examined. The debtor must demonstrate that she has made a good faith effort to repay the loan. *See Brunner*, 831 F.2d at 396. Given the fact that educational loans are made without regard to one's creditworthiness, each student borrower assumes an obligation to put forth a good faith effort towards repayment. *See Stebbins–Hopf*, 176 B.R. at 786 (citing *Roberson*, 999 F.2d at 1136). In considering this prong, the Court in *Stebbins–Hopf* went a step beyond the *Brunner* standard and reasoned that the "[C]ourt should consider whether the debtor has made an effort to maximize her income and minimize her expenses." *Id.*

█ Using the Brunner test as the standard for evaluation, this Court must consider whether the Debtor's circumstances warrant discharge under 11 U.S.C. § 523(a)(8). In doing so, the burden of proof is placed on the Debtor to establish that discharge is justified. *See Roberson*, 999 F.2d at 1137 (citing *In re Webb*, 132 B.R. 199, 201 (Bankr.M.D.Fla.1991)); *Stebbins–Hopf*, 176 B.R. at 787; *See also Coveney v. Costep Servicing Agent*, 192 B.R. at 142; *In re Mathews*, 166 B.R. at 941.

With regard to the Debtor's condition, the Court must consider the first prong of the Brunner test. Can the Debtor maintain, based on current income and expenses, a minimal standard of living for herself if forced to repay the loans? The Debtor's current monthly income is $700 while her current monthly expenditures are $796. In addition, the total assets of the Debtor amount to $10,442.74 while her total liabilities are $34,786.71. These figures demonstrate that the Debtor satisfies the first prong. The Debtor's expenses clearly exceed her income at present.

Next, the Court must consider the second prong of the Brunner test. The second question presented is whether the Debtor's condition is temporary or whether it will extend over a substantial portion of the repayment period. The Debtor has offered testimony and affidavits which verify her health problems. The Debtor has also undergone evaluations that reveal that she has an 11% body impairment. The Debtor suffers from cervical strain and post-traumatic stress syndrome. As a re-

sult of the evaluations, it has been found that the Debtor's health problems are not likely to improve in the future. Debtor, according to the evidence, is limited to "light" work, which prevents her from engaging in traditional nursing care. She has difficulty driving an automobile for long periods of time, which prevents her from engaging in home-nursing employment. Several of the documents in evidence indicate her neck and spinal difficulties are degenerative and chronic. The evaluations also reveal that despite the fact that the Debtor suffers from various health problems, her health problems do not preclude her from working at all. However, Debtor is approximately sixty years old. The practical likelihood of her acquiring new work skills given her physical and economic limitations appears minimal. Given the debtor's chronic physical impairments and lack of job skills which would serve her in a sedentary work setting, the Court concludes she has met the second prong of the Brunner test—that is, her condition is likely to extend over a substantial portion of the repayment period.

Turning to the third prong of the Brunner test, the Debtor has met this burden as well. Debtor diligently commenced making loan repayments and she made them regularly for approximately three years until she sought relief under Chapter 7 of the Bankruptcy Code. In considering "whether the Debtor has made an effort to maximize her income and minimize her expenses," this Court finds that the Debtor has exhausted all of her possibilities for increasing her income. The evidence does not indicate any distinct opportunities to increase income which might be available to Debtor.[1] She, on the other hand, has done much to decrease her expenses, including moving in with her adult son. In spite of her efforts, she is still unable to maintain anything more than a minimal standard of living. The Court finds she has made a good faith effort to repay.

To conclude, the evidence presented in this proceeding establishes that the Debtor has met the requirements of the Brunner test. Thus, having adopted the test as set out in *Brunner* and the policy requirement as articulated in *Stebbins–Hopf,* this Court finds that the Debtor is entitled to a hardship discharge pursuant to § 523(a)(8) of the Bankruptcy Code. A separate form of order will be entered in accordance with this decision.

---

1. This case was cleanly and professionally tried by a very capable and courteous lawyer against a pro se debtor. However, the Court must note its perception that this case is somewhat typical of most student loan suits: all the evidence presented is offered by the Debtor/Plaintiff subject to the cross-examination and argument of the creditor. Instead of balancing evidence in search of a preponderance, the Court watches to see if the water rises to the level of Brunner's "high-water mark." Most trial judges would prefer to hold a scale of justice rather than a yardstick. Having said that, it is difficult to imagine what else could be done or said in a typical student loan case. Perhaps evidence about the job market or wage rates, housing and subsistence costs, or evidence directly contradicting a particular plaintiff's assumptions would be appropriate. Whenever economically practical and/or possible from a factual standpoint, the Court encourages evidence from both sides in cases such as this.