Troy SMITH and Elizabeth
J. Smith, Debtors.

Troy Smith and Elizabeth J. Smith,
Plaintiffs–Appellees,

v.

Educational Credit Management
Corporation, Defendant–
Appellant.

BAP No. MB 05–005.
Bankruptcy No. 01–10486–JS.
Adversary No. 02–1113–JBR.

United States Bankruptcy Appellate Panel
for the First Circuit.

June 6, 2005.

608

John F. White, Esq., and Troy A. Gunderman, Esq., on brief for Defendant–Appellant.

Carl E. D'Angio, Esq. and Emily C. Towne, Esq., on brief for Plaintiffs–Appellees.

Before LAMOUTTE, VOTOLATO & HAINES, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

The defendant, Educational Credit Management Corporation ("ECMC"), appeals from the bankruptcy court's determination that Elizabeth Smith's student loan obligations to ECMC are dischargeable under 11 U.S.C. § 523(a)(8). Because we conclude that the bankruptcy court erred in its evaluation of the evidence and that the debtors did not meet their burden of establishing undue hardship, we **REVERSE** the judgment of the bankruptcy court.

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.' " *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). A bankruptcy court's order regarding the dischargeability of a debtor's student loan obligations is a final order. *See Educ. Credit Mgmt. Corp. v. Kelly (In re Kelly)*,

312 B.R. 200, 204 (1st Cir. BAP 2004) (citations omitted); *Educ. Credit Mgmt. Corp. v. Savage (In re Savage)*, 311 B.R. 835, 837 (1st Cir. BAP 2004) (citations omitted).

## STANDARD OF REVIEW

Generally, we evaluate a bankruptcy court's findings of fact pursuant to the "clearly erroneous" standard of review and its conclusions of law *de novo*. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *see also* Fed. R. Bankr.P. 8013; *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997). Several circuits have concluded that an "undue hardship" determination is a question of law that requires the application of a *de novo* standard of review, but that the factual findings underlying that determination are reviewed under the clearly erroneous standard.[1] Although the First Circuit has not formally adopted a specific approach to the review of § 523(a)(8) determinations, we apply the *de novo* standard to the legal conclusion of undue hardship. *See Kelly*, 312 B.R. at 204. We review the underlying factual findings for clear error. *See Savage*, 311 B.R. at 837.

## BACKGROUND

On January 22, 2001, Elizabeth and Troy Smith filed a petition under Chapter 7 of the United States Bankruptcy Code.[2] Thereafter, they initiated an adversary proceeding seeking a discharge of their respective student loan obligations to ECMC and Connecticut Student Loan Foundation ("CSLF").

At the time of trial, the outstanding balance on Elizabeth Smith's loan obligations to ECMC totaled $29,467.06, increasing at a rate of $3.84 per diem. Troy Smith's loan obligations to CSLF consisted of two separate loans on which he owed $8,853.67, increasing at a rate of $.81 per diem. Thus, at the time of trial, the Smiths owed a combined total of $38,320.73 on their three student loans, increasing at a rate of $4.65 per day.

Elizabeth Smith is a 39-year old woman in good health. She and her husband have one child, a 5-year old son named Julian, who was born with a sensory integration disorder. Due to certain developmental problems related to this disorder, Julian requires physical therapy, occupational therapy and speech therapy, which he receives primarily through the local public school system where he attends kindergarten. Julian also has juvenile diabetes and requires frequent monitoring and insulin shots.

Elizabeth Smith holds a Bachelor's Degree in English from the University of Massachusetts, Boston. At the time of trial, she was self-employed as a part-time house cleaner, working 2–3 hours and earning approximately $62.50 per week. She testified that she does not work full time because her son's health problems require her full attention and she needs to go to his school daily to administer his insulin shots. She testified, however, that her son's condition is improving and that she can increase her working hours to 20–30 hours per week.

1. *See, e.g., U.S. Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89 (5th Cir.2003); *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cir.2001); *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir.2001); *Tennessee Student Assistance Corp. v. Hornsby*, 144 F.3d 433, 436 (6th Cir.1998); *Woodcock v. Chemical Bank (In re Woodcock)*, 45 F.3d 363, 367 (10th Cir.1995); *In re Roberson*, 999 F.2d 1132, 1134 (7th Cir.1993); *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987).

2. All references to the "Bankruptcy Code" and all references to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

At the time of trial, Troy Smith was employed as an "account executive" for Cape Business Magazine, earning approximately $600 per week. Beginning in January 2005, he became eligible to earn a 10% commission on his sales, which he will receive as the company collects payment from his clients. Troy works an average of 40 hours per week, typically 9–5 on weekdays. At trial, he testified that he expected to make more money than he had ever made before in his life at his new job, and that the "sky's the limit" for his future earning potential.

The bankruptcy court determined that the Smiths' combined pre-tax weekly income is approximately $662.50 ($600 for Troy and $62.50 for Elizabeth) and, therefore, that their combined pre-tax monthly income is $2,850 ($662.50 × 4.3 weeks). Adjusting that figure to account for federal, state and social security taxes (at a 14.6% tax rate), the bankruptcy court estimated that the Smiths' have a combined monthly take-home income of $2,433.

The court found that the Smiths' monthly household expenses total $2,457 as follows: $1,500 for rent, $80 for heat and hot water, $10 for water, $114 for electricity, $250 for food, $25 for clothing, $308 for automobile expenses, $20 for charitable donations, $20 for recreation, $60 for telephone, $30 for cellular phone service, and $40 for cable. The bankruptcy court also took into account additional future expenses of $1,000 per month, including:

$500 per month for medical insurance, $150 per month for dental insurance, $100 per month for life insurance, and $250 per month for other (unspecified) reasonable expenses.

The bankruptcy court observed that the Smiths' current income is insufficient to pay their student loans, but considered that Elizabeth Smith could be expected to increase her income by working more hours. Taking existing and future expenses into account, the Smiths would have $200 a month available to pay against their student loans. The bankruptcy court held that the Smiths' repayment of the two smaller CSLF student loans would not constitute an undue hardship, and those loans were excepted from discharge. It further concluded, however, that requiring the Smiths to repay the entire ECMC loan would cause the family undue hardship. The entire ECMC loan was discharged. Although ECMC asked the court to except at least a portion of its loan from discharge, the court concluded it did not have the power to partially discharge a single educational loan. ECMC filed a timely notice of appeal.[3]

## DISCUSSION

### I. Burden of Proof

Under § 523(a)(8), debtors are not permitted to discharge educational loans unless excepting the loans from discharge will impose an undue hardship on the debtor and the debtor's dependants.[4]

---

**3.** This appeal involves only the discharge of the ECMC loan. The Smiths did not appeal the bankruptcy court's determination of non-dischargeability regarding the CSLF loans.

**4.** Section 523(a)(8) provides:
 (a) A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt—
 (8) for an educational benefit, overpayment or loan made, insured or guaran-

teed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend unless excepting such debt from discharge under this paragraph will imposed an undue hardship on the debtor and the debtor's dependents.
11 U.S.C. § 523(a)(8).

The creditor bears the initial burden of proving the debt exists and that the debt is of the type excepted from discharge under § 523(a)(8). *See Savage*, 311 B.R. at 838–39 (citing *Bloch v. Windham Prof'ls (In re Bloch)*, 257 B.R. 374, 377 (Bankr.D.Mass. 2001)). Once the threshold showing has been made, the burden shifts to the debtor to prove by a preponderance of the evidence that excepting the student loan debt from discharge will cause the debtor and her dependants "undue hardship." *See id.; see also Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (preponderance of the evidence standard for dischargeability complaints).

## II. Applicable Test for "Undue Hardship"

■■■ At trial, the Smiths asked the bankruptcy court to apply the "totality of the circumstances" test for determining undue hardship.[5] ECMC urged the bankruptcy court to adopt the so-called *Brunner* test.[6] The bankruptcy court refused to endorse a specific test, concluding: "[W]hether I use the 'totality of the circumstances' test I have embraced in the past or reconsider and adopt the *Brunner* test as argued by ECMC, I come to the same conclusion: it would be an undue

hardship for the Debtors to pay their entire student loan debt."

Neither the First Circuit nor the Panel has yet endorsed a specific test for determining undue hardship and both parties urge the Panel to adopt a test in this case. Because we find that the bankruptcy court's evaluation of the evidence led to clearly erroneous findings and that the Smiths have not established undue hardship under either test, it is not necessary for us to choose between the two tests in this case.

## III. Establishing "Undue Hardship"

### A. Income

■■■ Under either the totality of the circumstances test or the *Brunner* test, a debtor must show not only that her current income is insufficient to pay her student loans, but also that her prospects for increasing her income in the future are too limited to afford her sufficient resources to repay the student loans and provide herself and her dependents with a minimal (but fair) standard of living. *See Savage*, 311 B.R. at 839–40 (citing *Burkhead*, 304 B.R. at 566; *Bourque v. Educ. Credit Mgmt. Corp. (In re Bourque)*, 303 B.R. 548, 550 (Bankr.D.Mass.2003)).

---

**5.** The totality of the circumstances test involves "an analysis of (1) the debtor's past, present, and reasonably reliable future financial resources; (2) calculation of the debtor's and his dependents' reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding that particular bankruptcy case." *See Kopf v. United States Dep't of Educ. (In re Kopf)*, 245 B.R. 731, 739 (Bankr.D.Me.2000) (quoting *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 139 (8th Cir. BAP 1999)).

**6.** The *Brunner* test differs, albeit modestly, from the "totality of the circumstances" test. *See Kopf*, 245 B.R. 731 (comparing tests). The *Brunner* test requires a "three-part

showing (1) that the debtor cannot, based on current income and expenses, maintain a 'minimal' standard of living for herself or her dependants if forced to repay the loans; (2) that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987). The significant difference between the *Brunner* approach and the totality of the circumstances test is the requirement in *Brunner* that a debtor demonstrate that she has made good faith efforts to repay the educational loans at issue. *See Kelly*, 312 B.R. at 206.

■ The evidence shows that the Smiths' current income (as calculated by the bankruptcy court) is insufficient to pay their combined student loans. However, Elizabeth has promising prospects for increasing her disposable income in the future, especially as her son grows older and his medical condition improves. Therefore, it is reasonable to expect Elizabeth to increase her income either by working more hours per week at her house cleaning business, and/or by taking on additional part-time work. Elizabeth testified that she has the current ability to work more hours, and that she intends to work full time eventually. At the time of trial, she had applied for a position that would pay her $12 per hour for 20–30 hours per week.

The bankruptcy court recognized Elizabeth's immediate capacity to increase her income, determining that she could work 25 hours per week for "a modest pay of $15 per hour," earning a weekly gross income of $375. The bankruptcy court concluded that, after deducting 25% for taxes, Elizabeth's take-home income would be $281.25 per week, or approximately $1,200 per month ($281.25 × 4.3 weeks).

We conclude that the bankruptcy court erred in calculating Elizabeth's income. First, despite evidence that Elizabeth could work as many as 30 hours a week, the bankruptcy court only calculated her income for 25 hours per week. Even this small 5–hour a week adjustment would increase her post-tax income by approximately $250 per month.[7] In addition, the bankruptcy court erred in limiting her income to $15 per hour. The evidence shows that only two years ago (while caring for her son and cleaning houses), Elizabeth earned an average of $18 per hour plus tips as a waitress/bartender, and that she currently earns approximately $20–$25 per hour cleaning houses.

The bankruptcy court also erred in calculating Troy Smith's income. Troy currently earns a base rate of $600 per week or approximately $31,000 per year. The bankruptcy court failed, however, to include in its calculation the fact that Troy earns a 10% sales commission in addition to his base salary. Although Troy had only been on the job for a few months at the time of trial, he had already made sales of $15,000 in the first two months. Therefore, it is probable that Troy will earn future commissions that will significantly increase his income.[8] In addition, Troy testified that he hopes to eventually move into senior management and that his company's growth will afford him many opportunities for advancement. He described his future earning potential as the "sky's the limit." Despite this testimony, the bankruptcy court failed to consider the likelihood of future increases to Troy's income that would impact the Smiths' ability to pay their student loans. By failing to consider Troy's commission income and the likelihood of future increases to his earnings, the bankruptcy court erred.

**B. Reasonable Necessary Living Expenses**

■ To prove undue hardship for purposes of § 523(a)(8), a debtor must show that her necessary and reasonable expenses leave her with too little to afford repayment. A necessary living expense is one that the debtor cannot cut from the budget and still maintain a minimal stan-

7. Even if Elizabeth earned only $15 per hour, her pre-tax income for a 30–hour week would be $450 per week. Deducting 25% for taxes, her take-home pay would be $337.50 per week or approximately $1,450 per month ($337.50 × 4.3 weeks).

8. If Troy continues to make $15,000 in sales for every two-month period, or $7,500 in sales every month, he will earn a monthly commission of $750 (10% of $7,500).

dard of living. *See Savage,* 311 B.R. at 841. The bankruptcy court concluded that the Smiths spend $2,457 per month on necessary living expenses, including rent, heat, water, electricity, telephone, food and clothing. The bankruptcy court also determined that the Smiths would have $1,000 in additional future expenses, including: $500 per month for medical insurance, $150 per month for dental insurance, $100 per month for life insurance, and $250 per month in other reasonable expenses.

 Each undue hardship determination requires a "special consideration of the debtor's present employment and financial situation—including assets, expenses, and earnings—along with the prospect of future changes—positive or adversein the debtor's financial position." *Long,* 322 F.3d at 555 (citing *Andresen,* 232 B.R. at 141). Accordingly, courts are justified in considering a debtor's reasonably foreseeable future expenses. *See Andresen,* 232 B.R. at 141 (bankruptcy court noted that although debtor would have extra income in the future, she was also likely to incur considerable medical expenses due to her minor daughter's medical problems).

 Noting that the Smiths have no funds for medical or dental expenses; health insurance for their son but not for themselves; no life insurance; and no money to replace their aging motor vehicles, the bankruptcy court imputed additional expenses of $1,000 per month to the Smiths. Although the concerns underlying the court's imputation of these expenses are understandable, its calculation of the Smiths' future expenses was purely specu-

lative. It may be true that the Smiths do not have medical, dental or life insurance or money to purchase new cars, but there is nothing in the record to show that the Smiths have incurred, currently incur or will in the future incur any of those future expenses. Indeed, the evidence pointed to the likelihood that Troy Smith would soon obtain health insurance benefits from his job. The bankruptcy court erred in identifying and quantifying future expenses without any supporting evidence in the record. Consequently, the bankruptcy court's imputation of future expenses totaling $1,000 was clearly erroneous.[9]

## C. Non–Dischargeability

 Both the totality of the circumstances test and the *Brunner* test require an evaluation of the debtors' income and reasonably necessary expenses in determining undue hardship. Under each, the bankruptcy court is required not only to examine the debtors' *current* financial circumstances but their *future* financial situation in determining their ability to pay. Based on the foregoing, we conclude that the bankruptcy court erred in its evaluation of the evidence concerning the Smiths' current and future income and expenses and that the Smiths have not meet their burden of establishing undue hardship by a preponderance of the evidence. Without the unsupported $1,000 expense increase, accurately computing Elizabeth's future earning potential, and taking into account Troy's commissions (even without considering the raises he anticipates), the Smiths' projected budget yields over $1,700[10] which could be devoted to ECMC

---

9. We note that the bankruptcy judge did not inquire of the Smiths, directly or through counsel, about the prospects that such expenses might arise and, if they were to arise, what their amounts would be. Thus, the record is devoid of evidence on those points. Although the court's assumptions were sensible, they were not within the range of matters amenable to judicial notice. *See* Fed.R.Evid. 201.

10. If Elizabeth works 30 hours a week at $18 per hour, her pre-tax income would be $540 per week. Deducting 25% for taxes, her take-home pay will be $405 per week or approximately *$1,741* per month ($405 × 4.3 weeks).

loan repayment. The record discloses that repayment options likely available to the Smiths call for payments well below that amount. Therefore, the bankruptcy court erred in concluding that the ECMC loan is dischargeable.[11]

## CONCLUSION

For the reasons stated above, the bankruptcy court's judgment discharging the Smiths' loan obligations to ECMC is **REVERSED**, and this case is remanded for entry of judgment consistent with this opinion.

Troy currently makes $600 per week, or $2,580 per month ($600 × 4.3). Including a projected monthly commission of $750, his total pre-tax earnings will be approximately $3,330 per month. Deducting 25% for taxes, his take-home pay will be approximately *$2,497* per month. Thus, the Smiths will have combined take-home earnings of *$4,238* per month, which exceeds their actual expenses by $1,781 per month ($4,238–$2,457).

**11.** Courts of appeals addressing the issue have held that undue hardship must be established prior to any discharge, including a partial discharge. *See Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 622 (6th Cir.2004); *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1175 (9th Cir.2003); *Hemar Ins. Co. of Amer. v. Cox (In re Cox)*, 338 F.3d 1238, 1243 (11th Cir.2003). Since the Smiths have not established undue hardship, we need not address the issue of partial dischargeability.