In re Sabrina M. BLAKE, Debtor,

**Education Credit Management Corporation, Appellant,**

v.

**Sabrina M. Blake, Appellee.**

Civil Action No. 4:07–CV–160 (DF).

United States District Court, E.D. Texas, Sherman Division.

Oct. 22, 2007.

Donald Wayne Cothern, Attorney at Law, Tyler, TX, Troy Alan Gunderman, Educational Credit Management Corp., St. Paul, MN, for Appellant.

Robert Eugene Barron, Robert Barron Law Firm, Nederland, TX, for Appellee.

## ORDER

FOLSOM, District Judge.

Education Credit Management Corporation ("ECMC"), the successor in interest to the Defendant originally named by Sabrina M. Blake ("Blake") appeals the Judgment on Remand ("Remand Order") entered on February 14, 2007 by the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Bankruptcy Court"). Dkt. No. 6 at 14. The Court **REVERSES** the Judgement of the Bankruptcy Court and **REMANDS** for the Bankruptcy Court to enter an order consistent with these findings.

## I. Background

Blake attended Tompkins Cortland Community College from 1993–1996 and obtained a Business Administration Accountant Associate Degree. Joint Pre–Trial Order, *Blake v. New York State Higher Education*, No. 03–4288, at 1 (Bankr.E.D.Tex. February 8, 2005). Blake's loans were consolidated on June 6, 1996 in the amount of $14,363.56 while the amount owed as of January 26, 2004 was $32,881.81, including collection costs which

Blake disputes, and accruing interest at $6.24 per diem. *Id.*

Blake filed a bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code. *See In re Blake*, No. 05–138, at 2 (E.D.Tex. Dec. 28, 2005). Blake's debts were discharged in bankruptcy except for her student loans. *Id.* Blake sought discharge of the student loan by reason of undue hardship pursuant to 11 U.S.C. § 523(a)(8). Complaint, *Blake v. New York State Higher Educ. Corp.*, No. 03–43789, at 2 (Bankr. E.D.Tex. December 4, 2003). The Bankruptcy Court substituted ECMC for the defendant New York Higher Education Corp. F/K/A Sallie Mae L.S.C. and found in favor of Blake. *Blake v. New York State Higher Educ. Corp.*, No. 03–43789, at 2 (Bankr.E.D.Tex. Feb. 24, 2005). The Bankruptcy Court held that the repayment of the student loan would impose an undue hardship.

In a Statement of Issues on Appeal, ECMC asked this Court to determine whether Blake met all three prongs of the *Brunner* test, as adopted by the U.S. Court of Appeals for the Fifth Circuit in *U.S. Department of Education v. Gerhardt*, 348 F.3d 89 (5th Cir.2003). Statement of Issues to be Presented on Appeal, *Blake v. New York State Higher Education Corp.*, No. 03–43789, at 1 (Bankr. E.D.Tex. Mar. 10, 2005). This Court determined that the Bankruptcy Court's findings of fact were insufficient to make a determination as to the second prong of *Brunner*. *ECMC v. Blake*, No. 05–138, at 4 (E.D.Tex. Oct. 28, 2005). In particular, this Court stated:

> In a rather conclusory fashion, the Bankruptcy Court found that [Blake] met the second prong *of Brunner* based on her not expecting a pay raise, the number of hours worked per week, education, job skills, and age. However, the Bankruptcy Court failed to make any

express findings as to how these factors amount to "additional circumstances" which indicate that [Blake's] current state of affairs are likely to persist for any period of time. *Id.* at 6.

This Court vacated the Bankruptcy Court's judgment and remanded the case for further proceedings. *Id.* at 8. This Court also requested an inquiry into the possibility of a partial discharge which could eliminate any foreseeable undue hardship. *Id.* at 7.

The Bankruptcy Court issued an Order of Additional Findings of Fact and Conclusions of Law on Remand. *Blake v. Educ. Credit Mgmt. Corp. (In re Blake)* (the "Remand Order"), No. 03–43789 (Bankr. E.D.Tex. Feb. 14, 2007). The Bankruptcy Court considered the following additional circumstances: (1) Blake's age, physical appearance and condition; (2) loss of continued overtime availability; (3) hours worked; (4) Blake's lack of job advancement opportunity; (5) Blake's lack of marketable skills; (6) Blake's limited education and the amount of time elapsed since she received her associate's degree; and (7) Blake's underestimation of her expenses. *Id.* at 9–11. The Bankruptcy Court held that it is "highly likely that these additional circumstances will persist for a significant portion of the repayment period" and that Blake's financial condition "will deteriorate rather than improve due to these additional circumstances." *Id.* at 11.

ECMC filed a second appeal on April 4, 2007. Dkt. No. 1. A hearing was held on July 31, 2007.

## II. Standard of Review

The District Court reviews findings made in the bankruptcy court for clear error. *See Hickman v. Texas (In re Hickman),* 260 F.3d 400, 401 (5th Cir. 2001). This Court must give "due regard to the opportunity for the bankruptcy court to judge the credibility of the witnesses." *Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 701 (5th Cir.2003). The bankruptcy court "will be reversed only if, considering all the evidence, we are left with the definite and firm conviction that a mistake has been made." *Young v. Nat'l Union Fire Ins. Co. (In re Young),* 995 F.2d 547, 548 (5th Cir.1993). The bankruptcy court's conclusions of law are reviewed de novo. *In re Hickman,* 260 F.3d at 401. A finding of "undue hardship" is a mixed question of law and fact, wherein a legal conclusion is based on the debtor's individual factual circumstances. *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour),* 433 F.3d 393, 398 (4th Cir. 2005). The decision to discharge debtor's "debts represents a conclusion regarding the legal effect of the bankruptcy court's factual findings as to [the debtor's] circumstances" and is reviewed de novo. *U.S. Dept. of Educ. v. Gerhardt (In re Gerhardt),* 348 F.3d 89, 91 (5th Cir.2003).

## III. Discussion

Blake is seeking a discharge of her student loans under 11 U.S.C § 523(a)(8), which excepts from discharge a governmental loan "unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." The parties agree that the U.S. Court of Appeals for the Fifth Circuit adopted the *Brunner* test crafted by the Second Circuit to evaluate the "undue hardship" determination. *In re Gerhardt,* 348 F.3d at 91. The *Brunner* test requires that a debtor prove by a preponderance of the evidence:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*In re Gerhardt,* 348 F.3d at 91 (quoting *Brunner v. N.Y. State Higher Educ. Serv. Corp.,* 831 F.2d 395, 396 (2d Cir.1987)).

 The second prong of *Brunner* is "meant to be 'a demanding requirement.'" *Id.* at 92. "Additional circumstances" encompass "circumstances that impacted on the debtor's future earning potential but which [were] either not present when the debtor[ ] applied for the loans or [have] since been exacerbated." *Id.* Examples of "additional circumstances" include psychiatric problems, disability, lack of usable job skills, severely limited education, or the existence of a large number of dependents. *See id.* at 92 n. 2; *In re Frushour,* 433 F.3d at 401. The debtor must prove "a total incapacity ... in the future to pay [his] debts for reasons not within [his] control." *In re Gerhardt,* 348 F.3d at 92 (quoting *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 307 (3d Cir.1995)). On remand, this Court asked the Bankruptcy Court to determine whether Blake has demonstrated that "additional circumstances" would warrant a discharge of her loans.

The Bankruptcy Court's rulings can be consolidated into three types of circumstances: (1) Blake's overall health; (2) Blake's future employment and financial situation; and (3) Blake's standard of living.

## A. Blake's Overall Health

 The Bankruptcy Court stated:

At the time of Trial, the Plaintiff was about to turn 49 years old. The Plaintiff was taking numerous over-the-counter medications and did not have health or dental insurance. While the Plaintiff seemed to be physically able to work at a job requiring her to perform manual labor from 10:00 p.m. until the next morning with many hours of overtime, the Plaintiffs appearance and the volume of over-the-counter medication she was consuming showed that the work was taking a toll on her. Her ability to sustain that pace for a substantial portion of the repayment period is doubtful.

Remand Order at 9.

ECMC argues that age is not a sufficient "additional circumstance" preventing repayment of her student loans. Dkt. No. 6 at 35. For example, ECMC cites to a case where a district court overruled the bankruptcy court and found that the debtor did not satisfy the second prong, even though the debtor was in her mid-sixties, and held that the debtor's age "does not constitute an additional circumstance, especially where she does not have any 'age-related illnesses that affect her ability to work.'" *Educ. Credit Mgmt. Corp. v. Spence,* 341 B.R. 825 (E.D.Va.2006). Age was the primary "additional circumstance" provided by the debtor in In re Spence, but the court was not persuaded and determined that the debtor was healthy and well-educated. *Id.* at 827.

ECMC also cites to *In re Lowe* for the proposition that the debtor must show corroborating evidence to substantiate the debtor's medical condition. Dkt. No. 6 at 37 (citing *Lowe v. ECMC (In re Lowe),* 321 B.R. 852, 859 (Bankr.N.D.Ohio 2004)). Specifically, *In re Lowe* requires that the debtor must provide evidence showing not only a medical condition, but also a nexus between the condition and its adverse effect on debtor's employment or income. *In re Lowe,* 321 B.R. at 859.

In order for a medical condition to be a factor, the bankruptcy court must show that the condition impedes the debtor's ability to work. For example, in *In re Brightful*, the debtor was a 46–year–old single mother of a 14–year–old daughter, and though the bankruptcy court described the debtor as intelligent and physically healthy, the bankruptcy court also determined that the debtor was emotionally unstable, having made two suicide attempts. *Brightful v. Pennsylvania Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 330 (3d Cir. 2001). The Third Circuit stated that "[w]hat is missing from the Bankruptcy Court's analysis, however, is any discussion of the nature of Brightful's emotional and psychiatric problems, or how these problems prevent her from being gainfully employed. The Bankruptcy Court seems to have merely assumed that Brightful's emotional and psychiatric problems would automatically preclude her from holding full-time employment." *Id.*

Blake cites to *In re Kettler*, where the bankruptcy court discharged the debtor's loans. *Kettler v. Great Lakes Higher Educ. Serving Corp. (In re Kettler)*, 256 B.R. 719 (Bankr.S.D.Tex.2000). *In In re Kettler*, the debtor obtained student loans to become a nurse. *Id.* at 721. The debtor was a 60 year-old single woman with no dependents. *Id.* The debtor was paying off her student loans until she was involved in an automobile collision where she sustained injuries that prevented her from working as a nurse. *Id.* Thereafter, debtor was only able to obtain part-time employment with Barnes & Noble. *Id.* The debtor offered testimony and affidavits which verified her health problems limiting her to "light" work. *Id.* at 723–24. Though the evidence indicated that her health problems did not preclude her from working at all, the bankruptcy court determined that her physical impairments and

age made it impractical for the debtor to acquire new work skills. *Id.* at 724.

Blake's response does not indicate that she has any medical conditions or age-related illnesses that would preclude her from maintaining her current employment or pursuing other avenues of work. *See* Dkt. No. 7 at 18. The Bankruptcy Court cited Blake's age, the volume of over-the-counter pain-relievers, and Blake's appearance at trial in determining her inability to repay her student loan obligation. Remand Order at 9. However, unlike the court in *In re Kettler*, the Bankruptcy Court never found that Blake had any illness, physical or psychiatric, that may be related to her ability to be employed. In fact, the Bankruptcy Court stated that Blake "seemed to be physically able to work at a job requiring her to perform manual labor from 10:00 p.m. until the next morning with many hours of overtime." *Id.* Therefore, this Court does not determine that Blake has any age-related medical condition that would constitute an "additional circumstance."

## B. Blake's Future Employment and Financial Situation

The Bankruptcy Court cited to Blake's limited education, lack of job advancement opportunity and marketable skills, and the amount of time elapsed since she received her associate's degree. Remand Order at 10–11.

In this Court's previous order, the Court specifically discussed Blake's prospective employment and finances:

the Bankruptcy Court failed to make any express findings as to how these factors amount to "additional circumstances" which indicate that [Blake's] current state of affairs are likely to persist for any period of time. The [Bankruptcy Court] found that [Blake] was

making $9 an hour with no potential for advancement with her current employer. There is no indication whether the Bankruptcy Court considered whether [Blake] has searched for additional or higher paying employment, whether she sought a raise from her current employer, or the extent of her profit sharing. *Blake*, No. 05–138, at 6.

In response, the Bankruptcy Court stated that Blake "testified credibly that she is unlikely to receive any significant pay raises or advancement in her current position." Remand Order at 10. The Bankruptcy Court concluded that Blake would be unable to find a better paying job or receive a raise, but did not indicate whether Blake has tried to find a job or even ask for a raise. *See id.*

The Bankruptcy Court also discussed Blake's lack of marketable skills and her limited education and the amount of time elapsed since she received her associate's degree. *Id.* at 10–11. The Bankruptcy Court held that Blake has not held a job that either required or taught her any type of skill or trade. *Id.* at 10. The Bankruptcy Court also noted that Blake graduated from high school 22 years ago and received an associate's degree more than ten year's ago. *Id.* at 11. The Bankruptcy Court determined that Blake's degree "is not for a particular trade or skill," and Blake "is not using her degree in her current job." *Id.*

Blake reiterates these arguments and states that she "does not have a good education, an associates degree is hardly comparable to a four year college degree." Dkt. No. 7 at 16. Blake further argues that she "is currently working for a small business owner, and is in perhaps the best job she has had in her life." *Id.* at 17.

ECMC cites to multiple cases that did not discharge debts where the debtors were not able to use their degrees. Dkt.

No. 6 at 42. For example, both the Third Circuit and Seventh Circuit criticized a "policy test" which considered "whether the debtor has definitely benefitted financially from the education which the loan helped to finance." *In re Faish*, 72 F.3d at 305. The Third Circuit stated that "federal student loan programs were not designed to turn the government into an insurer of educational value." *Id.* (omitting quotations and citations).

ECMC cites to another Third Circuit case where the debtor had completed two years of college education but did not obtain a degree. *In re Brightful*, 267 F.3d at 326. The Third Circuit determined that the finding that the debtor lacked useful vocational training was clearly erroneous because of the skills the debtor used to work as a full-time legal secretary. *Id.* at 329. The debtor never received her college degree; however, the Third Circuit determined that though "she cannot anticipate significantly increased earnings in the future that would flow from her educational investment, .... it does not excuse [debtor] from meeting her student loan obligations." *Id.* at 331.

■ An inability to use a degree or obtain better employment from an educational investment does not constitute an "additional circumstance." For example, in *In re Alderete*, the debtors Mr. and Mrs. Alderete both received associate degrees in visual communications, and as a result carried a debt of $78,000, which represented over 98% of their total unsecured debt. *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1203 (10th Cir.2005). Mr. Alderete neither "looked for employment in the visual arts field nor has he sought higher paying employment opportunities in the landscaping business." *Id.* The Fifth Circuit further affirmed the additional factual

findings of the bankruptcy court which determined that the Alderetes were young, had no health conditions that impeded their ability to work, and as their children reached the age of majority, they would have less strain on their budget. *Id.* at 1205. Based on these findings, the Fifth Circuit determined that the second prong of the *Brunner* test was not met.

The Bankruptcy Court's assertion that Blake is unable to successfully translate her education into an improved employment situation is not an additional circumstance necessary to meet Blake's burden under the second prong. Having graduated with an Associate's Degree, it would be difficult for Blake to argue that she has a severely limited education.

Blake's situation is not comparable to the situation she cites to in *In re Speer*, where the debtor graduated from high school with a C average, failed out of several community colleges and failed to pass a Federal Aviation Association exam upon graduating from a technical school in which almost all of its graduates failed to pass the exam or secure employment. *Speer v. Educ. Credit Mgmt. Corp (In re Speer)*, 272 B.R. 186 (Bankr.W.D.Tex. 2001). Moreover, Blake's educational level far exceeds the limited education of the debtor in *In re Siebert* who had an 8th grade education, was unemployed, unskilled, and had two children, ages 4 and 8. *Siebert v. United States (In re Siebert)*, 10 B.R. 704, 705 (Bankr.S.D.Ohio 1981).

The Bankruptcy Court also made contradictory arguments by stating:

> The Plaintiff graduated from high school 22 years ago and received an associate's degree more than ten years ago. The Plaintiff's degree is not for a particular trade or skill. The Plaintiff is not using her degree in her current job. The Plaintiff has not been able to put her Associate's Degree to any significant use.

Remand Order at 11.

A debtor should not argue that she took out loans to receive a degree that "is not for a particular trade or skill" and then ask that the loans be excused because she has been unable to put that degree to any significant use. Nevertheless, this Court previously determined that "[Blake] testified that her employment is critical to the Merritt Custodial Services business; she supervises the employees, does the scheduling, and manages all the day-to-day business activities. The owner, Mr. Merritt, is not actively involved." *Blake,* No. 05–138, at 6. Blake received her degree in Business Administration, and as the supervisor and manager of the day-to-day business activities, Blake is, in fact, using her degree and learning new skills related to the field of her educational pursuit. This Court previously held that "[b]ased on the Bankruptcy Court's findings of fact, [Blake] appears intelligent, physically healthy, currently employed, possesses useful skills, and has no extraordinary, non-discretionary expenses. Although predicting her future capacity and potential is conjecture, there are no findings of the type of restraint that would lead the Court to believe she will lack the ability to repay for several years." *Blake,* No. 05–138, at 6–7. Despite the Bankruptcy Court's additional findings, the Court still does not find any circumstances that would cause undue hardship on Blake.

### C. Blake's Standard of Living

The Bankruptcy Court addressed Blake's loss of continued overtime availability, hours worked, and underestimation of her expenses. Remand Order at 10–11. These factors considered by the Bankruptcy Court are more appropriately addressed under the first prong. Never-

theless, the Court determines that these factors relied on by the Bankruptcy Court do not constitute additional circumstances under the second prong.

The Bankruptcy Court expressed concern that Blake will not be able to rely on overtime pay to supplement her income. *Id.* at 10. Yet, the Bankruptcy Court also indicated that Blake has "reached her reasonable capacity for hours worked." *Id.* Blake cites to *In re Cline* where the bankruptcy court determined that there was no evidence that overtime was either always available or mandatory, and no assurance that the debtor could handle continuous overtime. *Cline v. Illinois Student Loan Assistance Ass'n (In re Cline)*, 248 B.R. 347, 350 (8th Cir. BAP 2000). However, the court in *In re Cline* was applying the totality of the circumstances test and determined that although the case could be construed either way, there was nothing clearly erroneous about the bankruptcy court's ruling. *Id.* On the other hand, courts applying the *Brunner* test have taken overtime into consideration when determining a debtor's income. *See Kapinos v. Graduate Loan Ctr. (In re Kapinos)*, 253 B.R. 709, 714 (Bankr.W.D.Va.2000) (stating that the debtor had the ability to increase income by requesting overtime, obtaining a second job, or exploring other employment possibilities to produce more income).

■■■ Here, a flaw in the argument proffered by Blake and the Bankruptcy Court is that the overtime uncertainty is used as both a sword and a shield. On the one hand, Blake is working too many hours causing a detriment to her health, but, on the other hand, she may not have enough hours to supplement her income. Uncertainty in work scheduling is not the type of additional circumstance that would constitute an undue hardship.

■■■ The Bankruptcy Court also determined, sua sponte, that Blake had underestimated her own expenses. Remand Order at 11. The Bankruptcy Court stated that Blake would not only need a new car, but also would likely have significant medical or dental expenses in the future. *Id.* The Bankruptcy Court determined that since Blake did not have medical or dental insurance, "a routine trip to the doctor for antibiotics, or even a flat tire could devastate [Blake's] finances at anytime." *Id.*

ECMC cites to *In re Smith* where the bankruptcy court determined that the debtors had no funds for medical or dental expenses and no money to replace their aging motor vehicles. *Smith v. Educ. Credit Mgmt. Corp. (In re Smith)*, 328 B.R. 605, 613 (1st Cir. BAP 2005). *Id.* The bankruptcy court determined that it would be likely that the debtors would have to incur an additional $1000 in future expenses for medical, dental, and life insurance and other reasonable expenses. *Id.* The Bankruptcy Appellate Panel for the First Circuit found that the bankruptcy court "erred in identifying and quantifying future expenses without any supporting evidence in the record" and held that the imputation of future expenses was clearly erroneous. *Id.*

Here, the Bankruptcy Court does not provide any supporting evidence in the record that would necessitate any of Blake's purported additional expenses.

Moreover, a large portion of Blake's expenses seem to come from taking care of her daughter. The Bankruptcy Court cited *In re Nascimento* for the proposition that the second prong of the *Brunner* test was intended to effect the congressional intent "to make the discharge of student loans more difficult than that of other nonexcepted debt." *United Student Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir.

BAP1999). However, *In re Nascimento* also determined that the debtor failed the second prong of the test, noting that the debtor's responsibility to pay child support would end in the next three to six years, while the student loan was to be repaid over the next twenty years. *Id.* at 446. Similarly, in considering exceptional circumstances, the Third Circuit noted in *In re Brightful* that the debtor's daughter was two years from the age of majority and therefore the "legal dependency" was nearly at end. 267 F.3d at 330.

At the time of the trial, Blake's daughter was already eighteen and a half years old. As many cases have noted, Blake's daughter's legal dependency is near, if not already at, the end. *See Gill v. Nelnet Loan Servs (In re Gill)*, 326 B.R. 611, 631 (Bankr.E.D.Va.2005). While, realistically, Blake may still pay for much of her daughter's expenses, the Court cannot discharge student loans to allow the debtor to support independent children at the expense of creditors. *Id.*

The Bankruptcy Court determined that Blake's before-tax income was $1560 per month while her expenses were $2480 per month. Remand Order at 8, 11. The Bankruptcy Court did not take into account additional income from working overtime and Blake's 5% profit-sharing. In her responsive brief, Blake conceded that she "should only work sixty (60) hours a week thus her gross income would be around $2,1600.00 a month plus five percent profit which is very inconsistent." Dkt. No. 7 at 8. Without providing any support, the Bankruptcy Court stated that even if "[Blake's] daughter ceases to be a dependent and that [Blake] receives monthly profit sharing payments of $300.00 every month for the remainder of the ECMC Obligation repayment period, [Blake] would not have sufficient income to pay her reasonable expenses." Remand Order at 12. ECMC calculated that Blake was spending at least "$834 ($300 car payment, $294 car insurance, approximately $240 for gas and food) per month" on her daughter. Dkt. No. 6 at 31. Even conservatively estimating an additional $500 of income from a potential raise, overtime, profit-sharing, or a combination thereof, as Blake pays fewer expenses for her daughter, the estimated balance reflects that Blake would be able to pay her ECMC obligations.

## IV. Conclusion

Blake has not shown any additional circumstances under the second prong of the *Brunner* test that impact her future earning potential that were not present or exacerbated when she first applied for the loans. *See Gerhardt*, 348 F.3d at 92. Blake decided to pursue an associate's degree, hoping to improve her situation, but the decision only left her in more debt. Undoubtedly, more debt in an already dire financial situation, would seem insurmountable, but this is not the type of "additional circumstance" that would allow for an exception.

Though the parties addressed all three prongs of the *Brunner* test the Court only considered the Bankruptcy Court's findings which addressed the second prong. A failure to prove any of the prongs of the *Brunner* test is dispositive. In addition, because the requirements of 523(a)(8) have not been met, the Bankruptcy Court does not have the authority to grant a partial discharge. *See In re Alderete*, 412 F.3d at 1207.

This Court **ORDERS** that the Judgment of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division entered on February 14, 2007 is **REVERSED** and **REMANDS** for the

Bankruptcy Court to enter an order consistent with these findings.